UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- X

JEFFREY JAKUBIAK,                                     :
                                                      :
                          Plaintiff,                  :  20 Civ. 10842 (LGS)
                                                      :
          -against-                                   :  AMENDED COMPLAINT
                                                      :
QUANTUMSCAPE CORPORATION,                             :
                                                      :  JURY TRIAL DEMANDED
                          Defendant.                  :
---------------------------------------------------------------------- X

      Plaintiff Jeffrey Jakubiak ("Plaintiff"), by and through his undersigned attorneys, for his amended complaint against Defendant QuantumScape Corporation, successor in interest to Kensington Capital Acquisition Corp., alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge.

## JURISDICTION AND VENUE

      1.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. Plaintiff is a citizen of the state of Florida, and Defendant is a citizen of the state of California, and the amount in controversy exceeds $75,000.

      2.    This Court also has jurisdiction over the claim asserted under Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934 pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 78aa, as well as supplemental jurisdiction under 28 U.S.C. § 1367(a) over the remaining claims in the amended complaint, which comprise the same case or controversy.

      3.    This Court has personal jurisdiction over the defendant because (a) the defendant irrevocably submits to the jurisdiction of this Court with respect to any action, proceeding, or claim against it relating in any way to the warrant agreement that is the subject of this action, and

(b) personal jurisdiction attaches in any federal district with respect to claims asserted under Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934.

4.       Venue is proper pursuant to 28 U.S.C. § 1391(b)(3) as the defendant is subject to jurisdiction in this district because (a) the defendant expressly agreed that any action, proceeding or claim against it relating in any way to its warrant agreement is to be brought in the courts of the State of New York or the United States District Court for the Southern District of New York, and the defendant waived any objection to such exclusive jurisdiction and any objection that such courts represent an inconvenient form, and (b) the defendant is subject to jurisdiction in this district under 15 U.S.C. § 78aa.

## PARTIES

5.       Plaintiff Jeffrey Jakubiak is an individual who is a citizen of the state of Florida. Plaintiff took the actions that are the subject of this dispute when he was located in Florida.

6.       Defendant QuantumScape Corporation ("QuantumScape" or the "Company") is a corporation organized under the laws of the state of Delaware and headquartered in San Jose, California.  Pursuant to a business combination that closed on November 25, 2020, QuantumScape is the successor to Kensington Capital Acquisition Corp. ("Kensington Capital"), a Delaware corporation that was headquartered in Westbury, New York.

## FACTUAL ALLEGATIONS

**I.      Kensington Capital Goes Public As A SPAC On June 30, 2020 And Issues The Kensington Warrants Pursuant To A Warrant Agreement Dated June 25, 2020.**

7.       Kensington Capital was formed on April 27, 2020 as a special purpose acquisition company, also known as "SPAC" or a blank check company, for the purpose of effecting a merger or other business combination with one or more businesses in the automotive sector.

8.      On June 30, 2020, Kensington Capital completed an initial public offering of 23 million units at $10 per unit, generating gross proceeds of $230 million.  Each unit, which traded on the New York Stock Exchange under the symbol KCAC.U until the business combination with QuantumScape, consisted of one share of Class A common stock and one-half of one warrant to purchase one Class A share for $11.50.  Fifty-two days after the initial public offering, the units could, at the option of the holder, be separated into their two components -- the Class A common stock and the warrants – which began trading separately (under the symbols KCAC and KCAC.WS, respectively) on the New York Stock Exchange.

9.      In connection with its initial public offering, Kensington Capital was advised by the law firm of Hughes Hubbard & Reed LLP ("Hughes Hubbard") and UBS Securities LLC ("UBS"), who also acted as underwriter for its units.  Kensington Capital was sponsored by Kensington Capital Sponsor LLC, a Delaware limited liability company affiliated with Justin Mirro, who was also the Chief Executive Officer and Chairman of the Board of Kensington Capital when it went public.

10.     The proceeds of the offering, less certain expenses, were held in trust by Continental Stock Transfer & Trust Company ("Continental") pending the use of the funds to consummate a business combination.  If such a transaction were not completed in two years, the proceeds were required to be returned to the holders of the Class A shares.

11.     Kensington Capital also entered into a warrant agreement with Continental, which established the form of the warrants and the rights of the warrant holders.  The warrant agreement provides that it is governed by New York law and makes courts in the state of New York the exclusive forum for any claims relating in any way to the agreement.  The warrant agreement was signed on behalf of Kensington Capital by its Chief Financial Officer and

Secretary, Daniel Huber, who was also the individual at Kensington Capital designated to receive notices under the agreement.

12.     Both Hughes Hubbard and UBS advised Kensington Capital with respect to the terms of the warrant agreement, and both entities were designated to receive any notices under the agreement.

13.     The warrants permit holders to purchase shares of Class A common stock of the Company for $11.50 per share, or in the event of any reclassification or reorganization, to purchase and receive the kind and amount of consideration that the holder would have received had he or she exercised the warrant immediately prior to such reclassification or reorganization.

14.     The Company was also required, under section 7.4.1 of the warrant agreement, to use commercially reasonable efforts to file with the Securities Exchange Commission ("SEC") a registration statement under the Securities Act of 1933 for the shares issuable upon exercise of the warrants "as soon as practicable but in no event later than twenty (20) Business Days after the closing of its initial Business Combination."  In addition, the Company was required under the warrant agreement to use commercially reasonable efforts to cause the registration of such shares to become effective by the 60th business day following the closing of the Business Combination.

15.     In a section titled "Duration of Warrants," the warrant agreement stated that the warrants may be exercised during the period commencing on the later of 30 days following the completion of a business combination and the date that is twelve months from the closing of the initial public offering and ending five years from the date on which the Company completes its initial business combination.  This term was described in the registration statement for

Kensington's units and the attached financial statements that were filed in connection with Kensington's initial public offering.

16.     When Kensington Capital went public, there were 18,075,000 warrants outstanding, consisting of 11,500,000 classified as "Public Warrants" issued with the units in the initial public offering, and 6,575,000 classified as "Private Warrants" issued to the sponsor of Kensington Capital.  Both classifications of warrants have similar terms relating to the time of exercise.

## II.     The Company Files Its Form S-4 Registration Statement For The Business Combination With QuantumScape.

17.     On September 2, 2020, after almost two months of negotiations, Kensington Capital entered into a business combination agreement with QuantumScape Corporation ("Legacy QuantumScape"), a privately held Delaware corporation that was developing a lithium-metal solid-state battery technology for use in electric vehicles.  Pursuant to the agreement, Legacy QuantumScape was to be merged into Kensington Capital, with all of its shares exchanged for shares of Kensington Capital, and the name of Kensington Capital changed to QuantumScape Corporation.  As a result of the merger, Kensington Capital's common stock and warrants would become common stock and warrants of QuantumScape Corporation and would trade on the New York Stock Exchange under the symbols QS and QS.W.  Any remaining unseparated units in Kensington Capital would, at the time of the business combination, be separated into one share of QuantumScape Class A common stock and one-half of a QuantumScape warrant.

18.     In connection with the negotiation and documentation of the business combination, Kensington Capital was represented by Hughes, Hubbard and UBS.  The same individual at Hughes Hubbard, Charles Samuelson, acted as counsel to, and agent for, the

Company in connection with the initial public offering, the warrant agreement, and the business combination. Legacy QuantumScape was represented by the law firm of Wilson Sonsini and by Goldman Sachs. These advisors prepared or reviewed the documentation and SEC filings for the business combination. Each of these advisors, as well as Kensington Capital's Chief Executive Officer, Mr. Mirro, and Chief Financial Officer, Mr. Huber, were familiar with the warrant agreement and knew its terms.

19.     Pursuant to SEC Rule 145, a merger or consolidation which requires a vote of security holders of a corporation is deemed to be an offer of the surviving entity's securities for purposes of the Securities Act of 1933, and therefore requires registration of the new entity's securities. Such registration is accomplished through SEC Form S-4, which requires in Item 4(a)(3), referencing Item 202 of Regulation S-K (17 C.F.R. §229.202), that the company describe the terms of its securities in connection with the proposed transaction, and, as to warrants specifically, to describe "[t]he period during which … the warrants … are exercisable."

20.     On September 21, 2020, Kensington Capital and Legacy QuantumScape filed with the SEC a Form S-4 Registration Statement (the "Form S-4") under the Securities Act of 1933, which comprised the preliminary version of the combined proxy statement and prospectus for the QuantumScape business combination. Subsequently, a number of amended versions were filed, including Amendment No. 1 to Form S-4 filed on October 23, 2020, Amendment No. 3 to Form S-4 filed on November 9, 2020, and Amendment No. 4 to Form S-4 filed on November 10, 2020. The Form S-4 was submitted to the SEC in final form and went effective on November 12, 2020. There was one post-effective supplement filed on November 19, 2020.

21.     The Form S-4 was used to seek approval of the business combination from Kensington Capital's shareholders at a meeting that had been scheduled for and occurred on

6

November 25, 2020.  Many of the shareholders who would vote at that meeting were holders of Kensington units, consisting of one share of Class A common stock and one-half a warrant. The Form S-4 also registered, under the Securities Act of 1933, the securities of the surviving company in the merger.

22.     On the cover page of the Form S-4, Justin Mirro, the Chairman and Chief Executive Officer of Kensington Capital, was listed as the agent for service, with copies to Charles Samuelson of Hughes Hubbard & Reed LLP, Kensington Capital's counsel, and Michael Danaher and Mark Baudler of Wilson Sonsini Goodrich & Rosati PC, counsel to Legacy QuantumScape.  Mr. Mirro, with whom the SEC communicated about "your registration statement," and Daniel Huber, as Kensington's CFO and Secretary, were the two senior executives at Kensington Capital responsible for the preparation of Form S-4, and each of them knew its contents and communicated with the SEC concerning it.

**III.    The Form S-4 Registration Statement Stated In Every Version That The Kensington Warrants Will Become Exercisable 30 Days After The Closing Of The Transaction.**

23.     The Form S-4, as required by Item 202 of Regulation S-K, described the exercise period of the Kensington Warrants in two places, both of which stated that the warrants would become exercisable 30 days after the Closing of the business combination.  This statement that the warrant exercise period would commence 30 days after Closing was contained in all five versions of the Form S-4, as filed with the SEC on September 21, October 23, November 9, November 10, and November 12, 2020.

24.     The September 21, 2020 preliminary version of Form S-4 stated, in the first section, titled "QUESTIONS AND ANSWERS ABOUT THE BUSINESS COMBINATION," at page 9 (in the answer to the fifth question) that the warrants "will become exercisable 30 days after the consummation of the Business Combination, and expire at 5:00 p.m., New York City

time, five years after the consummation of the Business Combination or earlier upon redemption

or liquidation."

25.     In the body of that same September 21, 2020 preliminary Form S-4, in a required

section entitled "Description of Kensington's Securities," at page 225, the warrants were

described as follows:

> Each Kensington Warrant entitles the registered holder to purchase one share of Kensington Class A Common Stock at a price of $11.50 per share, subject to adjustment as discussed below, ***at any time commencing 30 days after the consummation of the initial business combination.*** (emphasis added).

26.     The September 21, 2020 Form S-4 was reviewed and revised by the executives,

lawyers and financial advisers for Kensington Capital and Legacy QuantumScape, and the

language on page 9 concerning the exercise period was modified in Amendment No. 1 to state

that the warrants "will become exercisable 30 days after the Closing," which in turn was defined

as the closing of business combination between Kensington Capital and QuantumScape.  This

version of the Form S-4 was submitted to the SEC on October 23, 2020, along with

correspondence from Charles Samuelson of Hughes Hubbard, on behalf of the Kensington

Capital, responding to comments from the SEC.  In the next three versions, including the final

Form S-4, that language about the commencement of the warrant exercise period was not

changed.

27.     On November 12, 2020, the Company publicly filed its final Form S-4

registration statement with the SEC, and Mr. Huber requested the SEC to accelerate its

effectiveness to that date.  The definitive prospectus, which became effective on November 12,

2020, stated in the initial section, "QUESTIONS AND ANSWERS ABOUT THE BUSINESS

COMBINATION," at page 9 (in answer to the fifth question), that "[t]he Kensington Warrants

will become exercisable 30 days after the Closing [of the proposed business combination with QuantumScape]…"  In the section titled "Description of Kensington's Securities," at page 237, the definitive document repeated the language from the preliminary document:

> Each Kensington Warrant entitles the registered holder to purchase one share of Kensington Class A Common Stock at a price of $11.50 per share, subject to adjustment as discussed below, ***at any time commencing 30 days after the consummation of the initial business combination.*** (emphasis added).

28.     The definitive prospectus and proxy statement noticed a special meeting of shareholders on November 25, 2020 to vote on the business combination between Kensington Capital and QuantumScape.  It further indicated that the business combination would close and be consummated "promptly following the special meeting of stockholders, provided that all other conditions to the Closing have been satisfied or waived."

29.     On November 19, 2020, Mr. Huber signed and filed a supplement to the Form S-4 on behalf of the Kensington Capital which set forth the final exchange ratio for the merger.  The supplement did not indicate any change to the information required by Item 202 of Regulation S-K that the warrants "will become exercisable 30 days after the Closing."

30.     On November 25, 2020, the shareholders of Kensington Capital approved the business combination, and the Closing occurred the same day.  Consequently, the warrants were to become exercisable on December 25, 2020, subject to an effective registration statement being filed with respect to the QuantumScape shares to be issued upon exercise.  QuantumScape's registration statement for those shares became effective on December 31, 2020, and the first trading day following that effective date was January 4, 2021.

**IV.** **Defendant Knew The Terms Of The Warrant Agreement And Intentionally Stated In The Form S-4 That The Warrants Will Become Exercisable 30 Days After Closing.**

31.     The Company knew the terms of its original warrant agreement and knew that the Form S-4 stated that the warrant exercise period would commence 30 days after the Closing. Justin Mirro and Dan Huber, both of whom were responsible for the Form S-4, and the attorneys at Hughes Hubbard and Wilson Sonsini who acted as agents for Kensington Capital or Legacy QuantumScape, were familiar with the terms of the warrant agreement and the information required to be provided in the Form S-4.

32.     These agents made the decision about the information to be included in the Form S-4 concerning the warrant exercise period, information that was provided deliberately because it was required to be included in the Form S-4 by Item 202 of Regulation S-K.  These agents had five opportunities to revise the statement about when the warrants would become exercisable, but made no substantive change to it.

33.     The unequivocal statement made by the Company in the Form S-4 that the warrant exercise period would commence 30 days after the Closing was made with knowledge of its rights under the warrant agreement, and with knowledge that the "later of" language in the original agreement was not part of the description of the warrant exercise period in the Form S-4.

34.     The Company knew that one year after its initial public offering was a fixed date – June 30, 2021 – which was much later than the scheduled closing date of November 25, 2020. If the Company intended to make June 30, 2021 the commencement date for exercise of the warrants, it knew it was required to provide that date in the description of the warrants in the Form S-4.

35.     During the period between the filing of the preliminary version of the Form S-4 and the final effective version, the Company received inquiries from warrant holders about the commencement date of the exercise period of the warrants.  On October 2, 2020, in response to one such inquiry, Mr. Huber instructed the head of investor relations that the information was set forth in the Form S-4, and the Company subsequently directed inquiring investors to the statement in the Form S-4 that "the warrants will become exercisable 30 days after the Closing." Mr. Huber, and therefore the Company, knew that investors were relying on that statement in the Form S-4 to make investment decisions with respect to the Company's securities.

36.     That the Company would allow exercise of the warrants 30 days after the Closing appeared to be reasonable and advantageous to it from a financial perspective.  QuantumScape is a development stage company that will not have any source of revenue until 2024 at the earliest and continues to need a constant source of new capital.  Immediate exercise of the warrants would have provided the Company with needed capital at $11.50 per share, a much better price than it was receiving from its sale of 50 million shares at $10 per share to private investors in conjunction with the business combination.

## V.     In Making His Investment Decision To Purchase And Sell Securities, Plaintiff Reasonably Relied On The Statement In The Form S-4 And Suffered Damages.

37.     Plaintiff relied on the statement in the Form S-4 for the business combination between Kensington Capital and QuantumScape concerning the date upon which the warrants would become exercisable – 30 days after Closing of the business combination -- to purchase warrants and to hedge his purchase of warrants through short sales of the Company's stock and sales of call options.  Between October 20, 2020 and December 8, 2020, Plaintiff, as trustee for the Jeffrey Jakubiak Revocable Living Trust, purchased 12,000 warrants.  Plaintiff also purchased 1,500 warrants in his individual retirement account on December 9, 2020.

38.     On December 10, 2020, Plaintiff sent an email to the investor relations department at QuantumScape indicating that he had purchased warrants after reading the proxy statement and the language indicating the warrants were exercisable 30 days after consummation of the business combination.  Plaintiff received a response stating that the warrants would not become exercisable under the 30-day provision and that the exercise period would instead commence on June 30, 2021, "as listed on the IR FAQs page (which was drafted and approved by legal the week of deal close)."  The Company knew, however, before the Closing, that the Form S-4 unambiguously stated that the warrants "will become exercisable 30 days after the Closing," and deliberately did not make any amendment to the Form S-4 before consummating the merger.

39.     When Plaintiff indicated that he had purchased warrants in reliance on the language in the Form S-4, he was told by email that "[t]he difference is that most deals close more than one year after the SPAC IPO'ed.  Kensington's official IPO was June 30, 2020, and hence 'the later of' language in this case actually is applicable given KCAC was quick to do a deal."  However, before the Closing of the merger, the Company and its investor relations department had been telling investors that the warrants "will become exercisable 30 days after the Closing."

40.     When informed that the warrants would not be exercisable until June 30, 2021, Plaintiff determined that the cost of his hedging transactions and the risks attendant with waiting more than six months to exercise the warrants would exceed any potential and uncertain value of the warrants on June 30, 2021, and he began to unwind his positions in an effort to mitigate his losses and avoid the substantial increased risk of holding the warrants through that date.

41.     Plaintiff suffered over $200,000 in lost profits, that is profits that he would have made had he been able to exercise the warrants on January 4, 2021, the first trading day after the registration statement became effective for the shares to be issued under the warrants.  Plaintiff further suffered a loss of over $400,000 on the hedging positions, which he entered into with the understanding that the warrants would be exercisable 30 days after Closing, but which he could not maintain for the additional six-month period that QuantumScape interposed when it delayed the commencement of the exercise period to June 30, 2021.

**VI.     Procedural Background to This Litigation.**

42.     Upon being informed that the Company was taking the position that the warrants would not become exercisable until June 30, 2021, plaintiff filed this action as a putative class action in New York Supreme Court on December 11, 2020, seeking among other things, injunctive relief requiring QuantumScape to allow exercise of the warrants before June 30, 2021. After the court in that action issued an order scheduling a preliminary injunction motion for January 19, 2021, QuantumScape removed the action to federal court under SLUSA.

43.     In a related case subsequently filed in New York Supreme Court, a preliminary injunction motion was heard on January 19, 2021.  In opposing the injunction, QuantumScape submitted an affidavit from Justin Mirro, the CEO of Kensington Capital, asserting -- in the face of the Company's statement in the Form S-4 that the warrants "will become exercisable 30 days after the Closing" -- that neither the board of Kensington Capital nor "the Kensington management team, which I lead as the Chief Executive Officer, decided to waive or amend any condition in the Warrant Agreement relating to the exercise date of the warrants."  Mr. Mirro's affidavit confirmed that he had personal knowledge of the terms of the warrant agreement at all material times.  Mr. Mirro's affidavit did not assert, however, that the Company, by or through

13

its agents, did not knowingly and intentionally make the statement in the Form S-4 that the warrants "will become exercisable 30 days after the Closing" as part of the business combination with QuantumScape.

44.     Furthermore, QuantumScape, in arguing at the injunction hearing that there were factual issues concerning its intent to waive or amend the "later of" clause in the warrant agreement, pointed to the notes to Kensington Capitals's financial statements in SEC filings for periods pre-dating the proposed business combination that described the original warrant agreement – specifically, Note 6 of Kensington Capital's audited financials as of May 8, 2020 reproduced from Kensington's June 2020 IPO prospectus and a Form 10Q setting forth Kensington Capital's unaudited financial statements for the pre-combination period ending September 30, 2020.  Those notes to pre-business combination financials did not describe the exercise period of the warrants in connection with the subsequent proposed business combination with QuantumScape, and the only statement in the Form S-4 description of the exercise period in connection with the QuantumScape business combination was that the warrants will become exercisable 30 days after the Closing.

45.     Finally, in arguing against an injunction, QuantumScape relied on language buried deep within an SEC filing made on December 2, 2020, after the business combination closed, quoting the "later of" language in the original warrant agreement, and referring the reader back to the Form S-4 for a description of the warrants.  That language itself was deceptive, as both the initial public offering and the Closing had occurred, yet the Company did not state that the exercise period would commence on June 30, 2021.  Moreover, the Company did not indicate that it was correcting the statement in the Form S-4 that the warrants will become exercisable 30

14

days after the Closing or provide the reason that every version of the Form S-4 contained that statement.

46.     Because QuantumScape never issued any statement clearly indicating that it was correcting or amending the statement in the Form S-4 that the warrants will become exercisable 30 days after the Closing of the QuantumScape business combination, plaintiff was unaware of the Company's position until the Company responded to his email on December 10, 2020.

47.     On February 16, 2021, QuantumScape changed its position and announced that it would permit exercise of the warrants beginning on March 5, 2021, rather than making warrant holders wait until June 30, 2021.  This decision to permit the warrants to be exercised currently, rather than on June 30, 2021, mooted the injunctive relief claims that were the subject of plaintiff's class action.

48.     Plaintiff nonetheless suffered damages when he was compelled to unwind his position in the warrants and hedging transactions after learning that the Company had determined not to allow exercise of the warrants until June 30, 2021.

## CAUSES OF ACTION

### COUNT I

### (For Breach of Contract – Waiver of Condition)

49.     Plaintiff realleges the preceding paragraphs as if fully set forth here.

50.     The warrant represents a contract between the Company, the warrant agent, and the holders of warrants.

51.     At the time, the Form S-4s were filed between September 21, 2020 and the closing of the QuantumScape business combination on November 25, 2020, the Company, through its executives and legal and financial advisors, was aware of the terms of the original

warrant agreement relating to the commencement of the exercise period.  Rather than provide, however, that the warrants would become exercisable upon "the later of" 30 days after the consummation of its initial business combination or one year after Kensington Capital's initial public offering (*i.e.*, June 30, 2021), the defendant stated in all versions of the Form S-4 that the warrants will become exercisable 30 days after the Closing of the QuantumScape business combination.

52.     The information required to be provided in the Form S-4 about the exercise date of the warrants in connection with the business combination with QuantumScape was knowingly and deliberately provided by the Company's CEO, CFO, and legal advisors and agents, who were familiar with the exercise period set forth in the original warrant agreement.

53.     While knowing the terms of the original warrant agreement, the Company nonetheless intended to set forth the exercise commencement date in the Form S-4 and knowingly stated that the warrants "will become exercisable 30 days after the Closing."

54.     Accordingly, the Company waived any 12-month condition that would have extended the exercise commencement date to June 30, 2021, and the Company could not reimpose that condition after the Closing of the business combination.

55.     The contract therefore permitted registered warrant holders, at their option, to exercise their warrants to purchase one share of Class A common stock of the Company at a price of $11.50 for each registered warrant, at any time during an exercise period commencing 30 days after the consummation of the business combination with QuantumScape and expiring five years after the business combination.

56.     The business combination with QuantumScape occurred on November 25, 2020, and thus, the exercise period should have commenced on December 25, 2020.

57.     Plaintiff suffered damages as a result of QuantumScape's refusal to allow exercise of the warrants 30 days after the Closing.

**COUNT II**

**(For Breach of Contract – As Amended)**

58.     Plaintiff realleges the preceding paragraphs as if fully set forth here.

59.     The warrant represents a contract between the Company, the warrant agent, and the holders of warrants.

60.     The warrant agreement contains an "Amendments" clause at Section 9.8, which states in relevant part:  "This Agreement may be amended by the parties hereto without the consent of the Registered Holder for the purpose of curing any ambiguity, or curing, correcting or supplementing any defective provision contained herein or adding or changing any other provisions with respect to matters or questions arising under the Agreement as the parties may deem necessary or desirable and that the parties deem shall not adversely affect the interest of the Registered Holders.  All other modifications or amendments, including any amendment to increase the Warrant Price or shorten the Exercise Period, shall require the vote or written consent of the Registered Holders of 50% of the then outstanding Public Warrants. Notwithstanding the foregoing, the Company may lower the Warrant Price or extend the duration of the Exercise Period pursuant to Section 3.1 and 3.2, respectively without the consent of the Registered Holders."

61.     The Company's Form S-4s for the business combination with QuantumScape filed between September 21, 2020 and the closing of the transaction on November 25, 2020 all stated unambiguously that the warrants will become exercisable 30 days after the Closing.  The Form S-4 did not provide that the exercise period for the warrants in connection with the

17

business combination being proposed would begin on June 30, 2021, nor did it state that the exercise period would not begin until 12 months after the Company went public.

62.     At the time the Form S-4s were filed, the Company, through its executives and legal and financial advisors, was aware of the terms of the original warrant agreement relating to the commencement of the exercise period.  Rather than provide, however, that the warrants would become exercisable on June 30, 2021, *i.e.*, upon "the later of" 30 days after the consummation of the QuantumScape transaction or one year after Kensington Capital's IPO, the Company knowingly abandoned the "later of" language.  The Company thereby knowingly amended the warrant agreement and extended the duration of the exercise period (so that it would begin on December 25, 2020, rather than the later date of June 30, 2021, in each case, expiring no later than November 25, 2025), as it was permitted to do pursuant to Section 9.8 of the warrant agreement.

63.     Having lengthened the exercise period by making the warrants exercisable 30 days after the Closing of the business combination, the Company could not then shorten the exercise period after Closing by delaying the commencement of exercise to June 30, 2021 without a vote of the warrant holders.

64.     Plaintiff has suffered injury and damage because of QuantumScape's breach of its commitment that the warrants "will become exercisable 30 days after the Closing."

### COUNT III

### (For Breach of Contract – Promissory Estoppel)

65.     Plaintiff realleges the preceding paragraphs as if fully set forth here.

66.     The warrant represents a contract between the Company, the warrant agent, and the holders of warrants.

67.    The Company's Form S-4s filed between September 21, 2020 and the closing of the business combination on November 25, 2020 contain a clear and unambiguous promise that the warrants "will become exercisable 30 days after the Closing…"  The Company was aware of the importance of the accuracy of this information, as the exercise period of the warrants was specifically required to be disclosed in the Form S-4s.

68.    At the time this statement was made, the Company, through its CFO, Dan Huber, knew that investors had made inquiries concerning when the warrants would become exercisable, directed that investors be referred to the language in the Form S-4 stating that the warrants "will become exercisable 30 days after the Closing," and knew that investors were relying on that information to make investment decisions.

69.    Notwithstanding such knowledge, the Company did not change the language of the Form S-4s stating that the "warrants will become exercisable 30 days after the Closing."

70.    Because the information was required to be disclosed in the Form S-4s, a document intended to allow investors to make fully informed investment decisions about a company's securities, and because the investors had made specific inquiries about the exercise date, the Company was aware, and could reasonably foresee, that investors would rely to their detriment on the statements made in the Form S-4s.

71.    Plaintiff reasonably relied on the statement in the Form S-4 that the warrants "will become exercisable 30 days after the Closing" to purchase warrants and implement related hedging transactions.  When the Company subsequently extended the exercise date for six months to June 30, 2021, Plaintiff closed his positions in the warrants and hedging transactions in order to avoid the substantially increased investment risk.

72.    As a result, the Company is contractually bound by its promise in the Form S-4 concerning the exercise of the warrants, and accordingly, breached its agreement by refusing to allow the warrants to be exercised beginning on December 25, 2020.

73.    Plaintiff is entitled to damages to compensate him for any and all lost profits and other harm caused by the Company's breach.

### COUNT IV

**(For Violation of §10(b) of the Exchange Act and Rule 10b-5 Against Defendant)**

74.    Plaintiff realleges the preceding paragraphs as if fully set forth here and alleges this Count in the alternative to Counts I through III.

75.    In its Form S-4s filed between September 21, 2020 and November 25, 2020 to register the Company's securities in connection with the business combination between Kensington Capital and Legacy QuantumScape and to solicit votes to approve the transaction, defendant stated that the warrants would become exercisable 30 days after the Closing of the business combination.  Defendant repeated this statement several times as follows:

- On September 21, 2020, when defendant filed Form S-4 with the SEC in preliminary form;

- On October 23, 2020 when defendant filed Amendment No. 1 to Form S-4 with the SEC;

- On November 9, 2020 when it filed Amendment No. 3 to Form S-4 with the SEC;

- On November 10, 2020 when it filed Amendment No. 4 to Form S-4 with the SEC; and

- On November 12, 2020 when it filed with the SEC the final Form S-4 and a final prospectus.

Kensington Capital's CFO, Daniel Huber, requested on behalf of the Company that the SEC accelerate the effectiveness of the final Form S-4 registration statement on November 12, 2020,

20

and it became effective that day with the statement that the warrants will become exercisable 30 days after closing of the transaction on November 25, 2020.

76.     On November 19, 2020, Mr. Huber filed a post-effective supplement to the Form S-4, but that supplement did not change the language indicating that the warrants would become exercisable 30 days after the Closing.

77.     At the time it made the statement, defendant knew the terms of the original warrant agreement, and knew that the description in the Form S-4s that the warrants would become exercisable in the context of the QuantumScape business combination 30 days after the Closing did not include the "later of" condition in the original warrant agreement.

78.     The date on which the warrants would become exercisable in the context of the proposed QuantumScape business combination was a material fact because a reasonable investor would consider it significant in making an investment decision.

79.     After the Closing, QuantumScape took the position that it had not intended to permit the warrants to be exercisable 30 days after the Closing of the business combination and that the warrants could not be exercised until June 30, 2021.  Defendant's statement in the Form S-4s that the warrants will become exercisable 30 days after the Closing of the QuantumScape business combination, consequently, was misleading.

80.     Defendant acted with scienter by knowingly or recklessly making a misleading statement in its Form S-4s, intending that investors would rely on the statement to make investment and voting decisions in connection with the business combination.   Defendant and its executives and agents knew at all times that the Form S-4s stated the warrants would become exercisable 30 days after the Closing, and directed investors to that language in the Form S-4 in response to inquiries about the when the warrants would become exercisable.  Notwithstanding

21

its knowledge that the Form S-4s described the exercise period as commencing 30 days after the Closing, the Company never amended the language before the Closing.

81.    Plaintiff reasonably relied on Defendant's statement that the warrants would become exercisable 30 days after the Closing, and in reliance on that statement entered into purchase and sale transactions of securities of the Company.   Plaintiff suffered monetary damages and lost profits when defendant took the position after the Closing that the warrants would not be exercisable until June 30, 2021.

82.    Defendant's actions violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.  Plaintiff is entitled to damages to compensate him for any and all harm caused by defendant's violation.

## COUNT V

### (For Common Law Fraud)

83.    Plaintiff realleges the preceding paragraphs as if fully set forth here and alleges this Count in the alternative to Counts I through III.

84.    In its Form S-4s filed between September 21, 2020 and November 25, 2020 to register the Company's securities in connection with the business combination between Kensington Capital and Legacy QuantumScape and to solicit votes to approve the transaction, defendant stated that the warrants would become exercisable 30 days after the Closing of the business combination. Defendant repeated this statement several times as follows:

- On September 21, 2020, when defendant filed Form S-4 with the SEC in preliminary form;

- On October 23, 2020 when defendant filed Amendment No. 1 to Form S-4 with the SEC;

- On November 9, 2020 when it filed Amendment No. 3 to Form S-4 with the SEC;

- On November 10, 2020 when it filed Amendment No. 4 to Form S-4 with the SEC; and

- On November 12, 2020 when it filed with the SEC the final Form S-4 and a final prospectus.

Kensington's CFO, Daniel Huber, requested on behalf of the Company that the SEC accelerate the effectiveness of the final Form S-4 registration statement on November 12, 2020, and it became effective that day with the statement that the warrants will become exercisable 30 days after closing of the transaction on November 25, 2020.

85. On November 19, 2020, Defendant filed a post-effective supplement to the Form S-4, but that supplement did not change the language indicating that the warrants would become exercisable 30 days after the Closing.

86. At the time it made the statement, defendant knew the terms of the original warrant agreement and knew that its description in the Form S-4s that the warrants would become exercisable in the context of the QuantumScape business combination 30 days after the Closing did not include the "later of" condition in the original warrant agreement.

87. After the Closing, QuantumScape took the position that it had not intended to permit the warrants to be exercisable 30 days after the Closing and that the warrants could not be exercised until June 30, 2021. Defendant's statement in the Form S-4s that the warrants will become exercisable 30 days after the Closing of the QuantumScape business combination, consequently, was misleading.

88. Defendant acted with scienter by knowingly or recklessly making a misleading statement in its Form S-4s, intending that investors would rely on the statement to make investment and voting decisions in connection with the business combination. Defendant and its executives and agents knew that the Form S-4s stated the warrants would become exercisable 30

23

days after the Closing, and directed investors to that language in the Form S-4 in response to inquiries about the when the warrants would become exercisable.  Notwithstanding its knowledge that the Form S-4s described the exercise period as commencing 30 days after the Closing, the Company never amended the language before the Closing.

89.     Defendant intended for others to rely on the Form S-4 statement, as Defendant directed investors to that language in the Form S-4 in response to inquiries about when the warrants would become exercisable.

90.     Plaintiff reasonably relied on defendant's statement that the warrants would become exercisable 30 days after the Closing, and in reliance on that statement, entered into purchase and sale transactions in securities of the Company.  Plaintiff suffered monetary damages and lost profits when Defendant took the position that the warrants would not be exercisable until June 30, 2021.

91.     Plaintiff is entitled to damages resulting from his reliance on defendant's statement that the warrants will become exercisable 30 days after the Closing.

## COUNT VI

### (For Negligent Misrepresentation)

92.     Plaintiff realleges the preceding paragraphs as if fully set forth here and alleges this Count in the alternative to Counts I through III.

93.     In its Form S-4s filed between September 21, 2020 and November 25, 2020 to register the Company's securities in connection with the business combination between Kensington Capital and Legacy QuantumScape and to solicit votes to approve the transaction, defendant stated that the warrants would become exercisable 30 days after the Closing of the business combination.   Defendant repeated this statement several times as follows:

- On September 21, 2020, when Defendant filed Form S-4 with the SEC in preliminary form;

- On October 23, 2020 when Defendant filed Amendment No. 1 to Form S-4 with the SEC;

- On November 9, 2020 when it filed Amendment No. 3 to Form S-4 with the SEC;

- On November 10, 2020 when it filed Amendment No. 4 to Form S-4 with the SEC; and

- On November 12, 2020 when it filed with the SEC the final Form S-4 and a final prospectus.

Kensington's CFO, Daniel Huber, requested on behalf of the Company that the SEC accelerate the effectiveness of the final Form S-4 registration statement on November 12, 2020, and it became effective that day with the statement that the warrants will become exercisable 30 days after closing of the transaction on November 25, 2020.

94.     On November 19, 2020, Defendant filed a post-effective supplement to the Form S-4, but that supplement did not change the language indicating that the warrants would become exercisable 30 days after closing.

95.     At the time it made the statements, Defendant knew the terms of the original warrant agreement, and knew that its description in the Form S-4s that the warrants would become exercisable in the context of the QuantumScape business combination 30 days after the Closing did not include the "later of" condition in the original warrant agreement.

96.     After the Closing, QuantumScape took the position that it had not intended to permit the warrants to be exercisable 30 days after the Closing and that the warrants could not be exercised until June 30, 2021.  Defendant's statement in the Form S-4s that the warrants will become exercisable 30 days after the Closing of the QuantumScape business combination, consequently, was misleading.

97.     Defendant, in the exercise of reasonable care, should have known that it was making a misleading statement in its Form S-4s, and that investors would rely on the statement to make investment and voting decisions in connection with the business combination. Defendant knew that the Form S-4s stated the warrants would become exercisable 30 days after the Closing, and directed investors to that language in the Form S-4 in response to inquiries about the when the warrants would become exercisable.  Notwithstanding its knowledge that the Form S-4s described the exercise period as commencing 30 days after the Closing, the Company never amended the language before the Closing.

98.     Defendant intended for others to rely on the Form S-4 statement, as defendants directed investors to that language in the Form S-4 in response to inquiries about when the warrants would become exercisable.

99.     Plaintiff reasonably relied on defendant's statement that the warrants would become exercisable 30 days after closing, and in reliance on that statement, entered into purchase and sale transactions in securities of the Company.  Plaintiff suffered monetary damages and lost profits when Defendant took the position that the warrants would not be exercisable until June 30, 2021.

100.    Plaintiff is entitled to damages resulting from his reliance on Defendant's statement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A.  Declaring that the Defendant has breached its contractual obligations by failing to allow the exercise of the warrants issued by the Company beginning 30 days after the consummation of its business combination on November 25, 2020; or in the alternative, declaring that Defendant has violated §10(b) of the Securities Exchange Act and Rule 10b-5, has committed common law fraud and/or made a negligent misrepresentation;

B.  Awarding Plaintiff damages resulting from Defendant's refusal to allow exercise of the warrants beginning 30 days after the November 25, 2020 consummation of the business combination between Kensington Capital and QuantumScape;

C.  Awarding Plaintiff reasonable attorneys' fees and costs; and

D.  Granting such other and further relief as the Court deems just and proper.


Dated:  Great Neck, New York
        March 25, 2021

                                    Respectfully submitted,

                                    **SHAHMOON KELLER PLLC**

                                      /s/ Carol S. Shahmoon
                                    Carol S. Shahmoon
                                    cshahmoon@shahmoonkeller.com
                                    Gregory E. Keller
                                    gkeller@shahmoonkeller.com
                                    One Great Neck Road, Suite 7
                                    Great Neck, NY 11021
                                    Tel: (646) 517-4399
                                    Fax: (646) 880-9359

                                    *Counsel for Plaintiff Jeffrey Jakubiak*

4851-8664-6754, v. 2