```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
JEFFREY JAKUBIAK,                                           :
                                    Plaintiff,              :
                                                            :        20 Civ. 10842 (LGS)
                -against-                                   :
                                                            :        OPINION AND ORDER
                                                            :
QUANTUMSCAPE CORPORATION,                                   :
                                    Defendant.              :
------------------------------------------------------------X
```

LORNA G. SCHOFIELD, District Judge:

Plaintiff Jeffrey Jakubiak brings this action against Defendant QuantumScape Corporation alleging (1) breach of contract, (2) fraud, (3) negligent misrepresentation and (4) violation of § 10(b) of the Exchange Act and Rule 10b-5. Defendant moves to dismiss the fraud, negligent misrepresentation and § 10(b) and Rule 10b-5 claims in the Amended Complaint (the "Complaint"). The motion to dismiss is denied in part and granted in part.

I.   BACKGROUND

The following facts are taken from the Complaint and are assumed to be true only for purposes of this motion. *See R.M. Bacon, LLC v. Saint-Gobain Performance Plastics Corp.*, 959 F.3d 509, 512 (2d Cir. 2020).

Defendant QuantumScape Corporation is a Delaware corporation headquartered in California. QuantumScape is the successor to Kensington Capital Acquisition Corp. ("Kensington"), a Delaware corporation that was headquartered in New York until it combined with QuantumScape on November 25, 2020.

Kensington was formed on April 27, 2020, for the purpose of effecting a merger or other business combination with a business in the automotive sector. In June 2020, Kensington completed an initial public offering ("IPO") of units that traded on the New York Stock

Exchange ("NYSE"). Each unit consisted of one share of Class A common stock in Kensington and one-half of one warrant to purchase one Class A share for $11.50. Fifty-two days after the IPO, holders of the units could choose to separate the units into their two components so that the Class A share and warrant would trade separately on the NYSE.

Kensington entered into a warrant agreement with Continental Stock Transfer & Trust Company. That agreement establishes the form of the warrants and the rights of the warrant holders. The agreement states that the warrants may be exercised during the period commencing on the later of (1) thirty days following the completion of a business combination and (2) the date that is twelve months from the closing of the IPO.

On September 21, 2020, Kensington and Legacy Quantumscape, pre-merger QuantumScape, filed a Form S-4 Registration Statement ("S-4") with the SEC, which comprised the preliminary version of the combined proxy statement and prospectus for the combination of Kensington and Legacy QuantumScape ("the Combination"). The S-4 stated in two places that the warrants would become exercisable thirty days after the closing of the Combination. The same statement was included in four subsequent versions of the S-4 filed in October and November 2020.

Plaintiff, as trustee for the Jeffrey Jakubiak Revocable Living Trust, purchased 12,000 warrants between October 20, 2020, and December 8, 2020. Plaintiff also purchased 1,500 warrants for himself on December 9, 2020. In making these purchases, Plaintiff relied on the statement in the S-4 regarding the exercise date of the warrants.

On December 10, 2020, Plaintiff emailed the investor relations department at QuantumScape regarding the exercise date of the warrants and was told that the exercise period would commence on June 30, 2021, not thirty days after the closing of the Combination, which

took place on November 25, 2020.  Plaintiff thereafter began unwinding his positions, including certain hedging positions that he maintained.  Plaintiff suffered $200,000 in lost profits on the warrants and over $400,000 in losses on hedging positions.

On February 16, 2021, QuantumScape changed its position on the exercise date of the warrants.  It began permitting exercise of the warrants on March 5, 2021.

## II.  STANDARD

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party but does not consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (internal quotation marks omitted).  To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *accord Dane v. UnitedHealthcare Ins. Co.*, 974 F.3d 183, 189 (2d Cir. 2020).  It is not enough for a plaintiff to allege facts that are consistent with liability; the complaint must "nudge[]" claims "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Bensch v. Estate of Umar*, 2 F.4th 70, 80 (2d Cir. 2021).  To survive dismissal, plaintiffs "must provide the grounds upon which [their] claim rests through factual allegations sufficient to raise a right to relief above the speculative level." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 121 (2d Cir. 2019) (alteration in original) (internal quotation marks omitted).

"A complaint alleging securities fraud must also satisfy heightened pleading requirements set forth in Federal Rule of Civil Procedure 9(b) and the [PSLRA]." *Set Cap. LLC v. Credit Suisse Grp. AG*, 996 F.3d 64, 75 (2d Cir. 2021).  The heightened pleading standard of Rule 9(b) requires: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  "The complaint must detail the specific statements that are false or fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018).  "The primary purpose of these requirements is to afford [the] defendant fair notice of the plaintiff's claim and the factual ground upon which it is based."  *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 94 (2d Cir. 2018) (alteration in original) (internal quotation marks omitted).

"The PSLRA expanded on the Rule 9(b) pleading standard, requiring that 'securities fraud complaints specify each misleading statement; that they set forth the facts on which [a] belief that a statement is misleading was formed; and that they state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'"  *Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 108 (2d Cir. 2012) (alteration in original) (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005)); *accord In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 148 (S.D.N.Y. 2021).  "A complaint will survive 'only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'"  *Setzer v. Omega Healthcare Invs., Inc.*, 968 F.3d 204, 212 (2d Cir. 2020) (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)).

III.   DISCUSSION

    A.   Violation of § 10(b) and Rule 10b-5

The Complaint sufficiently pleads a § 10(b) claim. "To state a claim under § 10(b) and Rule 10b-5, 'a plaintiff must allege that the defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury.'" *Setzer*, 968 F.3d at 212 (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007)). Defendant argues that the Complaint does not adequately plead scienter and that Plaintiff's reliance on the alleged misstatement was not reasonable. As explained below, these arguments are unpersuasive.

    a.   Scienter

The Complaint sufficiently alleges scienter. "To establish scienter, a complaint may (1) allege facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness, or (2) allege facts to show that defendants had both motive and opportunity to commit fraud." *Set Cap. LLC*, 996 F.3d at 78 (internal quotation marks omitted). The sufficiency of a complaint's allegations of scienter are evaluated "'holistically' considering 'all of the facts alleged, taken collectively,' rather than 'any individual allegation, scrutinized in isolation.'" *Id.* (quoting *Tellabs, Inc.*, 551 U.S. at 323, 326). "For an inference of scienter to be strong, as required by the PSLRA, a reasonable person must deem it cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* (internal quotation marks omitted). "In the securities fraud context, recklessness must be conduct that is highly unreasonable, representing an extreme departure from the standards of ordinary care, not merely a heightened form of negligence . . . ." *In re Advanced Battery Techs., Inc.*, 781 F.3d

638, 644 (2d Cir. 2015) (citation and internal quotation marks omitted); *accord Gray v. Alpha & Omega Semiconductor, Ltd.*, No. 20 Civ. 2414, 2021 WL 4429499, at *10 (S.D.N.Y. Sept. 27, 2021). A claim based on recklessness typically is sufficient if the complaint "specifically allege[s] defendants' knowledge of facts or access to information contradicting their public statements." *Setzer*, 968 F.3d at 215.

"Where a defendant is a corporation, this requires pleading facts that give rise to a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Jackson v. Abernathy*, 960 F.3d 94, 98 (2d Cir. 2020) (internal quotation marks omitted). "[M]ost courts look to the discrete roles played by the corporate actors who are connected to the alleged misrepresentation to determine which (if any) fall within the locus of a company's scienter." *Id.* "Under this approach, the most straightforward way to raise a strong inference of corporate scienter is to impute it from an individual defendant who made the challenged misstatement." *Id.* (internal quotation marks omitted). But, "[i]n exceedingly rare instances, a statement may be so dramatic that collective corporate scienter may be inferred." *Id.* (internal quotation marks omitted).

The Complaint sufficiently alleges recklessness rising to the level of scienter. The Complaint alleges that the September 23, 2020, version of the S-4 misstated the exercise date of the warrants by stating twice that the warrants "will become exercisable 30 days after the consummation of the Business Combination" when Kensington did not intend for the warrants to become exercisable thirty days after the consummation. The Complaint notes that this language was amended in the first amendment of the S-4 filed on October 23, 2020, to state that the warrants "will become exercisable 30 days after the Closing." Closing was defined in the same manner as consummation of the Business Combination. Three subsequent versions of the S-4

6

incorporated the same statement.  The Complaint further alleges that Defendant knew facts and had access to information contradicting this statement because (1) Kensington entered the agreement establishing the exercise period for the warrants, which was in conflict with the exercise period stated in the S-4, and (2) key Kensington executives who prepared and signed the S-4 were aware of the agreement governing the warrants and its terms.

Viewed holistically, and drawing all reasonable inferences in favor of the non-moving party, the facts alleged in the Complaint provide a cogent basis for scienter that is at least as compelling as any opposing inference.  The Complaint alleges that the S-4 provided the incorrect exercise date for the warrants, that Kensington's CFO pointed investors to that exercise date when asked about the proper exercise period and that Kensington amended the language describing the exercise date but failed to correct the misstatement.  Although the S-4 included an attached document dated months earlier that noted the correct exercise date, Defendant nevertheless misstated the exercise date in the main text of the S-4.  These facts, taken together, are sufficient to show that Defendant acted with a level of recklessness well beyond ordinary negligence in preparing their S-4.  The only opposing inference Defendant argues is that the error was inadvertent, but inadvertence is not inconsistent with recklessness.  *See Setzer*, 968 F.3d at 213 (noting that recklessness includes "conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it" (internal quotation marks omitted)).

Defendant's argument that there was no scienter because an attachment to the S-4 disclosed the actual exercise period of the warrants is unpersuasive.[1] Defendant points to notes to unaudited financial statements that predate the S-4 and were attached to the S-4. Those notes state the exercise period for the warrants is the later of (i) thirty days after the Closing and (ii) twelve months from the closing of the IPO. Defendant fails to explain why an investor reading the S-4 and attached financial statements would take greater notice of or credit the notes to an unaudited financial statement dated four months prior to the S-4 over the descriptions provided in the main text of the S-4 under the heading "Warrants."

Defendant's remaining arguments are similarly unconvincing. First, Defendant cites several cases alleging material omissions to argue that Defendant did not act with scienter because it made other filings that disclosed the correct exercise period for the warrants. Defendant further argues that it acted inadvertently on the "omission" of the twelve-month exercise period in the S-4. But the Complaint alleges that Defendant misstated the exercise period, not that they omitted the proper exercise period. Second, Defendant argues that the alleged misstatements do not constitute an "extreme departure" from the standards of ordinary care because the statements at issue are "select" and "isolated" among thousands of pages of proxy materials. This argument is unconvincing, drawing reasonable inferences in favor of the non-moving party and considering that the misstated information was a required disclosure by the SEC; the instructions for the S-4 and Regulation S-K, 17 C.F.R. § 229.202(c)(2), require the issuer to disclose the exercise period of the warrants. Third, Defendant argues that the

---

[1] On a 23(b)(6) motion, courts may "consider extrinsic material that the complaint incorporates by reference, that is integral to the complaint, or of which courts can take judicial notice." *Lively v. WAFRA Inv. Advisory Grp.*, 6 F.4th 293, 305 (2d Cir. 2021) (internal quotation marks omitted). The S-4 is both incorporated by reference in the Complaint and integral to the Complaint.

allegations regarding Kensington senior executives' knowledge are generic. The allegations are not generic because they specifically identify how Kensington executives were aware of conflicting information. For example, Kensington's CFO signed the warrant agreement on behalf of Kensington. Fourth, Defendant argues that the alleged misstatement is obviated by the correct statement of the exercise period in QuantumScape's December 2, 2020, 8-K and on QuantumScape's website. This argument is unconvincing at this stage of the litigation. The 8-K does not purport to correct the misstatement in the S-4 and instead merely states the correct exercise period while simultaneously explicitly incorporating the description of the warrants in the S-4, which contains the misstatement. The facts alleged in the Complaint do not support Defendant's argument that QuantumScape's website correctly disclosed the exercise period as early as November 25, 2020.

### b. Reliance

The Complaint sufficiently alleges that Plaintiff reasonably relied on the misstatements. "An investor may not justifiably rely on a misrepresentation if, through minimal diligence, the investor should have discovered the truth." *Ashland Inc. v. Morgan Stanley & Co.*, 652 F.3d 333, 337-38 (2d Cir. 2011); *accord Tanzanian Royalty Expl. Corp. v. Crede CG III, Ltd.*, No. 18 Civ. 4201, 2019 WL 1368570, at *8 (S.D.N.Y. Mar. 26, 2019). Numerous factors are relevant to a reliance analysis, including the plaintiff's "access to the relevant information," "concealment of the fraud," "the opportunity to detect the fraud" and the sophistication of the plaintiff. *Ashland Inc.*, 652 F.3d at 338. Drawing all inferences in favor of Plaintiff, he reasonably relied on the disclosure of the exercise period in the main text of the S-4. As stated above, that information was required by Regulation S-K to be included in the S-4. An investigation by Plaintiff would not likely have lead to the correct information because the Complaint alleges that in response to

inquiries about the proper exercise period, Kensington instructed investors to read the S-4, which contained the misstatement. This alleged instruction and the unequivocal statement of the exercise period in the S-4 makes Plaintiff's reliance on the S-4 reasonable.

Defendant's arguments that (1) Plaintiff had access to the correct information and (2) Plaintiff did not carefully read disclosures are unpersuasive. Even though Plaintiff had access to information stating a different exercise period, that information, as noted above, was included in documents that predated the S-4, so it was not unreasonable for Plaintiff to rely on the most current information available.

### B. Common Law Fraud

The Complaint alleges sufficient facts to support an inference of fraud sufficient to satisfy Rule 9(b). Defendant's only argument against the Complaint's fraud claim is that the Complaint did not allege facts sufficient to find scienter and reliance for Plaintiff's 10(b) claim. Those arguments fail for the reasons discussed above.

### C. Negligent Misrepresentation

#### a. Applicable Law

The negligent misrepresentation claim is governed by New York law. A New York federal court sitting in diversity and adjudicating state law claims must apply New York choice of law rules. *See AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 132 (2d Cir. 2018). New York choice of law analysis first requires a court to "determine whether there is an actual conflict between the laws of the jurisdictions involved." *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 641 (2d Cir. 2016) (citation omitted). If there is such a conflict, New York determines the applicable law for tort causes of action using an "interest analysis." *In re Thelen LLP*, 736 F.3d 213, 219 (2d Cir. 2013); *accord TransPerfect Glob., Inc. v. Lionbridge*

*Techs., Inc.*, No. 19 Civ. 3283, 2020 WL 1322872, at *7 (S.D.N.Y. Mar. 20, 2020).  As the parties' competing arguments reflect, there is an "actual conflict" between Florida and New York law related to the negligent misrepresentation claim, and an interest analysis is required.

On the current record, interest analysis favors application of New York law for the negligent misrepresentation claim.  Under this approach, "the law of the jurisdiction having the greatest interest in the litigation will be applied and . . . the [only] facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict."  *In re Thelen LLP*, 736 F.3d at 219 (alteration in original); *accord TransPerfect Glob. Inc.*, 2020 WL 1322872, at *7.  For so-called conduct regulating torts, including negligent misrepresentation, "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders."  *In re Thelen LLP*, 736 F.3d at 220 (quoting *Cooney v. Osgood Mach., Inc.*, 612 N.E.2d 277, 280 (N.Y. 1993)); *accord Doe v. Indyke*, 468 F. Supp. 3d 625, 631 (S.D.N.Y. 2020) (applying New York law); *see Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*, No. 17 Civ. 8987, 2019 WL 1244294, at *16 (S.D.N.Y. Mar. 18, 2019) (applying New York law and noting that negligent misrepresentation is based on "conduct regulating rules").  Generally, where tortious conduct occurs in one jurisdiction and injuries are suffered in another, "the situs of the tort is where the last event necessary for liability occurred."  *White Plains Coat & Apron Co. v. Cintas Corp.*, 460 F.3d 281, 285 (2d Cir. 2006) (citing *Schultz v. Boy Scouts of Am.*, 480 N.E. 2d 679, 683 (N.Y. 1985)).  The last event criterion "gives way when it is at war with state interests so that the more general principles of interest analysis apply."  *MasterCard Int'l Inc. v. Nike, Inc.*, 164 F. Supp. 3d 592, 605 (S.D.N.Y. 2016) (internal quotation marks omitted).

The Complaint alleges that Kensington has its principal place of business in New York and the warrants trade on the NYSE.  The S-4 at issue was signed in New York.  Plaintiff is a Florida resident.  In this case, the last event for liability is the financial harm Plaintiff suffered in Florida.  *See MasterCard,* 164 F. Supp. 3d at 605 (noting the injury was inflicted in New York because the plaintiff was domiciled there).  Nevertheless, New York has a greater interest in regulating business conduct within its borders, as compared with Florida or the other states where investors may be domiciled.  *See Licci v. Lebanese Canadian Bank, SAL*, 672 F.3d 155, 158 (2d Cir. 2012) (finding New York law applied to tort claim where all of the challenged conduct occurred in New York even though the plaintiffs' injuries occurred in Israel, where plaintiffs were domiciled); *MasterCard*, 164 F. Supp. 3d at 605-06 (finding Oregon law applied to tort claim where defendants were domiciled in Oregon and the only connection to New York was that plaintiff was domiciled there).  Accordingly, New York law governs the negligent misrepresentation claim.

Plaintiff's argument that California law should apply if Florida law does not is unpersuasive.  Plaintiff argues that California is the state with the next greatest interest in the case after Florida because QuantumScape's business operations are based in California.  This argument ignores that the warrants traded on the NYSE and that Kensington, which issued the warrants, is based in New York.

### b.  Special Relationship

The Complaint fails to plead a negligent misrepresentation claim because it does not allege a special relationship between Defendant and Plaintiff.  Under New York law, negligent misrepresentation claims require "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the

information was incorrect; and (3) reasonable reliance on the information." *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1109 (N.Y. 2011); *accord Wallkill Med. Dev., LLC v. Catskill Orange Orthopaedics, P.C.*, 115 N.Y.S.3d 67, 71 (2d Dep't 2019). The Complaint does not allege a special relationship, and Plaintiff does not argue that such a relationship exists. Courts in this district have frequently held that no special relationship exists between the issuer of a security and members of the investing public for purposes of New York negligent misrepresentation claims. *See Silvercreek Mgmt. v. Citigroup, Inc.*, 346 F. Supp. 3d 473, 498 (S.D.N.Y. 2018) (collecting cases). The negligent misrepresentation claim is dismissed.

### IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART. The Complaint's negligent misrepresentation claim is dismissed. The motion is otherwise denied as to the Complaint's fraud and § 10(b) claims. Defendant's motion for oral argument is DENIED as moot.

The Clerk of Court is respectfully directed to close the motions at Docket Numbers 34 and 40.

Dated:  November 16, 2021
        New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE