UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                      :
JEFFREY JAKUBIAK,                                     :
                                                      :
                        Plaintiff,                    :     20 Civ. 10842 (LGS)
                                                      :
                - against -                           :
                                                      :
QUANTUMSCAPE CORPORATION,                             :
                                                      :
                        Defendant.                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                      :
BJI FINANCIAL GROUP INC. and                          :
BRIAN WALSH                                            :
                                                      :     21 Civ. 08755 (LGS)
                        Plaintiffs,                   :
                                                      :
                - against -                           :
                                                      :
QUANTUMSCAPE CORPORATION,                             :
                                                      :
                        Defendant.                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                      :
MICHAEL ASSANTE, JOHN                                 :
WILSCHKE, and HEADWATERS                              :     21 Civ. 09565 (LGS)
HOLDINGS LLC,                                         :
                                                      :
                        Plaintiffs,                   :
                                                      :
                - against -                           :
                                                      :
QUANTUMSCAPE CORPORATION,                             :
                                                      :
                        Defendant.                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## CONSOLIDATED AMENDED COMPLAINT

Plaintiffs Jeffrey Jakubiak, Michael Assante, John Wilschke, Headwaters Holdings LLC,

BJI Financial Group Inc., and Brian Walsh (collectively "Plaintiffs"), by and through their

undersigned attorneys, for their consolidated amended complaint filed pursuant to the Court's

order of January 14, 2022 and without prejudice or waiver of any rights with respect to the

negligent misrepresentation claim filed as Count VI in each of these consolidated actions and

dismissed by the Court in orders dated November 16, 2021 and January 14, 2022, allege the

following upon information and belief, except as to those allegations concerning each Plaintiff,

which are alleged upon personal knowledge of such Plaintiff.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over the claim asserted under Section 10(b) and Rule

10b-5 of the Securities Exchange Act of 1934 pursuant to 28 U.S.C. § 1331 and 15 U.S.C. §

78aa, as well as supplemental jurisdiction under 28 U.S.C. § 1367(a) over the remaining claims

in this complaint, which comprise the same case or controversy.

2.      This Court has jurisdiction over the claims asserted by Plaintiffs Jeffrey Jakubiak,

BJI Financial Group Inc., Brian Walsh, and Michael Assante pursuant to 28 U.S.C. § 1332.

These Plaintiffs are citizens of Florida and New Jersey, and Defendant is a citizen of the state of

California, and the amount in controversy in each Plaintiff's claim exceeds $75,000.

3.      This Court has personal jurisdiction over the Defendant because (a) personal

jurisdiction attaches in any federal district with respect to claims asserted under Section 10(b)

and Rule 10b-5 of the Securities Exchange Act of 1934 and (b) the Defendant irrevocably

submitted to the jurisdiction of this Court with respect to any action, proceeding, or claim against

it relating in any way to the warrant agreement that is the subject of this action.

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b)(3) as the Defendant is subject to

jurisdiction in this district because (a) the Defendant expressly agreed that any action, proceeding

or claim against it relating in any way to its warrant agreement is to be brought in the courts of

the State of New York or the United States District Court for the Southern District of New York,

and the Defendant waived any objection to such exclusive jurisdiction and any objection that such courts represent an inconvenient form, and (b) the Defendant is subject to jurisdiction in this district under 15 U.S.C. § 78aa.

## PARTIES

5.     Plaintiff Jeffrey Jakubiak is an individual who is a citizen of the state of Florida. Plaintiff Jakubiak took the actions that are the subject of this dispute while located in Florida.

6.     Plaintiff BJI Financial Group Inc. is a corporation organized under the laws of the state of New Jersey and headquartered in Marlboro Township, New Jersey.  Plaintiff Brian Walsh is an individual who is a citizen of the state of New Jersey and was at all material times the sole owner and controlling shareholder of BJI Financial Group Inc.  BJI Financial Group Inc. and Brian Walsh are referred to collectively as the "BJI Plaintiffs."  The BJI Plaintiffs took the actions that are the subject of this dispute while located in New Jersey.

7.     Plaintiff Michael Assante is an individual who is a citizen of the state of New Jersey.  Plaintiff Assante took the actions that are the subject of this dispute while located in New Jersey.

8.     Plaintiff John Wilschke is an individual who is a citizen of the state of California. Plaintiff Wilschke took the actions that are the subject of this dispute while located in California.

9.     Plaintiff Headwaters Holdings LLC ("Headwaters Holdings") is a limited liability company organized under the laws of the state of California and is headquartered in Sausalito, California.  Plaintiff Headwaters Holdings took the actions that are the subject of this dispute while located in California.

10.     Defendant QuantumScape Corporation ("QuantumScape" or the "Company") is a corporation organized under the laws of the state of Delaware and headquartered in San Jose,

California.  Pursuant to a business combination that closed on November 25, 2020,

QuantumScape is the successor to Kensington Capital Acquisition Corp. ("Kensington Capital"),

a Delaware corporation that was headquartered in Westbury, New York.

### FACTUAL ALLEGATIONS

I.     **Kensington Capital Goes Public As A SPAC On June 30, 2020 And Issues The Kensington Warrants Pursuant To A Warrant Agreement Dated June 25, 2020.**

11.     Kensington Capital was formed on April 27, 2020, as a special purpose

acquisition company, also known as a "SPAC" or blank check company, for the purpose of

effecting a merger or other business combination with one or more businesses in the automotive

sector.

12.     On June 30, 2020, Kensington Capital completed an initial public offering of 23

million units at $10 per unit, generating gross proceeds of $230 million.  Each unit, which traded

on the New York Stock Exchange under the symbol KCAC.U until the business combination

with QuantumScape, consisted of one share of Class A common stock and one-half of one

warrant to purchase one Class A share for $11.50.  Fifty-two days after the initial public offering,

the units could, at the option of the holder, be separated into their two components -- the Class A

common stock and the warrants – which began trading separately (under the symbols KCAC and

KCAC.WS, respectively) on the New York Stock Exchange.

13.     In connection with its initial public offering, Kensington Capital was advised by

the law firm of Hughes Hubbard & Reed LLP ("Hughes Hubbard") and UBS Securities LLC

("UBS"), who also acted as underwriter for its units.  Kensington Capital was sponsored by

Kensington Capital Sponsor LLC, a Delaware limited liability company affiliated with Justin

Mirro, who was also the Chief Executive Officer and Chairman of the Board of Kensington

Capital when it went public.

14.    The proceeds of the offering, less certain expenses, were held in trust by Continental Stock Transfer & Trust Company ("Continental") pending the use of the funds to consummate a business combination.  If such a transaction were not completed in two years, the proceeds were required to be returned to the holders of the Class A shares.

15.    Kensington Capital also entered into a warrant agreement with Continental, which established the form of the warrants and the rights of the warrant holders.  The warrant agreement provides that it is governed by New York law and makes courts in the state of New York the exclusive forum for any claims relating in any way to the agreement.  The warrant agreement was signed on behalf of Kensington Capital by its Chief Financial Officer and Secretary, Daniel Huber, who was also the individual at Kensington Capital designated to receive notices under the agreement.

16.    Both Hughes Hubbard and UBS advised Kensington Capital with respect to the terms of the warrant agreement, and both entities were designated to receive any notices under the agreement.

17.    The warrants permit holders to purchase shares of Class A common stock of the Company for $11.50 per share, or in the event of any reclassification or reorganization, to purchase and receive the kind and amount of consideration that the holder would have received had he or she exercised the warrant immediately prior to such reclassification or reorganization.

18.    The Company was also required, under section 7.4.1 of the warrant agreement, to use commercially reasonable efforts to file with the Securities Exchange Commission ("SEC") a registration statement under the Securities Act of 1933 for the shares issuable upon exercise of the warrants "as soon as practicable but in no event later than twenty (20) Business Days after the closing of its initial Business Combination."  In addition, the Company was required under

the warrant agreement to use commercially reasonable efforts to cause the registration of such shares to become effective by the 60th business day following the closing of the Business Combination.

19.    In a section titled "Duration of Warrants," the warrant agreement stated that the warrants may be exercised during the period commencing on the later of 30 days following the completion of a business combination and the date that is twelve months from the closing of the initial public offering and ending five years from the date on which the Company completes its initial business combination.  This term was described in the registration statement for Kensington's units and the attached financial statements that were filed in connection with Kensington's initial public offering on June 30, 2020.

20.    The warrant agreement could be amended at any time without the consent of warrant holders in a manner that may be deemed "necessary or desirable … and shall not adversely affect the interest of the [warrant holders]," which would include allowing the warrants to be exercised as early as possible and in doing so extending the warrant exercise period.

21.    When Kensington Capital went public, there were 18,075,000 warrants outstanding, consisting of 11,500,000 classified as "Public Warrants" issued with the units in the initial public offering, and 6,575,000 classified as "Private Warrants" issued to the sponsors of Kensington Capital, including Justin Mirro.  Both classifications of warrants have similar terms relating to the time of exercise.

## II.    The Company Files Its Form S-4 Registration Statement For The Business Combination With QuantumScape.

22.    On September 2, 2020, after almost two months of negotiations, Kensington Capital entered into a business combination agreement with QuantumScape Corporation ("Legacy QuantumScape"), a privately held Delaware corporation that was developing a lithium-

metal solid-state battery technology for use in electric vehicles.  Pursuant to the agreement, Legacy QuantumScape was to be merged into Kensington Capital, with all of its shares exchanged for shares of Kensington Capital, and the name of Kensington Capital changed to QuantumScape Corporation.  Upon closing of the merger, Kensington Capital's shareholders would own less than 8% of the surviving entity, and Kensington Capital's common stock and warrants would become common stock and warrants of QuantumScape Corporation trading on the New York Stock Exchange under the symbols QS and QS.W.  Any remaining unseparated units in Kensington Capital would, at the time of the business combination, be separated into one share of QuantumScape Class A common stock and one-half of a QuantumScape warrant.

23.     In connection with the negotiation and documentation of the business combination, Kensington Capital was represented by Hughes Hubbard and UBS.  The same individual at Hughes Hubbard, Charles Samuelson, a corporate and securities partner with over 25 years' experience who served as the co-chair of the firm's corporate group, acted as counsel to, and agent for, Kensington Capital in connection with the initial public offering, the warrant agreement, and the business combination.  Legacy QuantumScape was represented by the law firm of Wilson Sonsini and by Goldman Sachs.  These advisors prepared or reviewed the documentation and SEC filings for the business combination, were familiar with the warrant agreement, and knew its terms.

24.     Kensington Capital's Chairman and Chief Executive Officer, Mr. Mirro, and Chief Financial Officer, Mr. Huber, were the members of management at Kensington Capital who were responsible for the preparation and filing of the Form S-4, including Mr. Miro's personal letter to shareholders and the "QUESTIONS AND ANSWERS ABOUT THE BUSINESS COMBINATION" at the beginning of the document.  Both were also familiar with

the terms of warrant agreement, as Mr. Mirro indicated in an affidavit dated January 11, 2021, and Mr. Mirro had a substantial personal interest in the 5.7 million private warrants that were the subject of that agreement, whose value would vary substantially depending on when the exercise period commenced.

25.     Pursuant to SEC Rule 145, a merger or consolidation which requires a vote of security holders of a corporation is deemed to be an offer of the surviving entity's securities for purposes of the Securities Act of 1933, and therefore requires registration of the new entity's securities.  Such registration is accomplished through SEC Form S-4, which requires in Item 4(a)(3), referencing Item 202 of Regulation S-K (17 C.F.R. §229.202), that the company describe the terms of its securities in connection with the proposed transaction, and, as to warrants specifically, to describe "[t]he period during which … the warrants … are exercisable."

26.     On September 21, 2020, Kensington Capital and Legacy QuantumScape filed with the SEC a Form S-4 Registration Statement (the "Form S-4") under the Securities Act of 1933, which comprised the preliminary version of the combined proxy statement and prospectus for the QuantumScape business combination.  Subsequently, they filed several amended versions.  The Form S-4 was submitted to the SEC in final form and went effective on November 12, 2020.  Mr. Huber, Kensington Capital's CFO and Secretary, filed a post-effective supplement to the Form S-4 on November 19, 2020.

27.     The Form S-4 was used to seek approval of the business combination from Kensington Capital's shareholders at a meeting that had been scheduled for and occurred on November 25, 2020.  Many of the shareholders who would vote at that meeting were holders of Kensington units, consisting of one share of Class A common stock and one-half a warrant. The

Form S-4 also registered, under the Securities Act of 1933, the securities of the surviving company in the merger.

28.     On the cover page of the Form S-4, Justin Mirro was listed as the agent for service, with copies to Charles Samuelson of Hughes Hubbard, Kensington Capital's counsel, and Michael Danaher and Mark Baudler of Wilson Sonsini Goodrich & Rosati PC, counsel to Legacy QuantumScape. Mr. Mirro, with whom the SEC communicated about "your registration statement," and Mr. Huber, the CFO, were the two senior executives at Kensington Capital responsible for the preparation of Form S-4. Each of them knew its contents and communicated with the SEC concerning it.

29.     Mr. Mirro had over 25 years of operating, M&A, and financing experience, and since 1996 had positions in several investment banks where he "played a key role in leading and executing all aspects of capital raising, M&A and restructurings" in "over 70 transactions totaling more than $60 billion of value." Mr. Huber had worked for over 10 years in the investment banking industry, and had recently served as a managing director of corporate development and M&A at Conduent, Inc. "leading all aspects of deal execution across multiple industry verticals…"

30.     Kensington Capital's legal team at Hughes Hubbard for the QuantumScape business combination consisted, according to the firm, of at least 15 lawyers led by Mr. Samuelson.

31.     Legacy QuantumScape's law firm, Wilson Sonsini, claims to represent more technology companies in merger and acquisition transactions than any other U.S. law firm, and to be consistently ranked among the top M&A advisors in the United States. Wilson Sonsini identifies itself as counsel on "the full range of M&A transactions…including SPACs and

reverse mergers…"  Wilson Sonsini's legal team was led by Michael Danaher, a corporate and securities lawyer for over 20 years with "one of the most active practices in the country representing venture-backed companies," and Mark Baudler, a "corporate law veteran" at the firm for over 25 years.  According to the firm's website, the team advising QuantumScape on the business combination consisted of at least twenty-two lawyers – eight partners and fourteen associates and of counsel.

III.    **The Form S-4 Registration Statement Stated In Every Version That The Kensington Warrants Will Become Exercisable 30 Days After The Closing Of The Transaction.**

32.    The Form S-4, as required by Item 202 of Regulation S-K, described the exercise period of the Kensington Warrants in two places, both of which stated that the warrants would become exercisable 30 days after the Closing of the business combination.  This statement that the warrant exercise period would commence 30 days after Closing was contained in all versions of the proxy and registration statement filed with the SEC between September 21, 2020, and the shareholder vote and closing of the merger on November 25, 2020.

33.    The September 21, 2020 preliminary version of Form S-4 stated, in the first section, titled "QUESTIONS AND ANSWERS ABOUT THE BUSINESS COMBINATION," at page 9 (in the answer to the fifth question) that the warrants "will become exercisable 30 days after the consummation of the Business Combination, and expire at 5:00 p.m., New York City time, five years after the consummation of the Business Combination or earlier upon redemption or liquidation."

10

34.    In the body of that same September 21, 2020 preliminary Form S-4, in a required

section entitled "Description of Kensington's Securities," at page 225, the warrants were

described as follows:

> Each Kensington Warrant entitles the registered holder to purchase one share of
> Kensington Class A Common Stock at a price of $11.50 per share, subject to
> adjustment as discussed below, ***at any time commencing 30 days after the
> consummation of the initial business combination.*** (emphasis added).

35.    The September 21, 2020 Form S-4 was prepared, reviewed, and revised by Mr.

Mirro, Mr. Huber, the senior executives of Legacy QuantumScape, Mr. Samuelson and the legal

team at Hughes Hubbard, Messrs. Danaher and Baudler and the legal team at Wilson Sonsini,

and the financial advisers for Kensington Capital and Legacy QuantumScape.  On October 23,

2020, Mr. Samuelson, on behalf of Kensington Capital, filed Amendment No. 1 to the Form S-4

with the SEC, together with a letter responding to SEC comments on the Form S-4, which,

among other things, modified the language on page 9 concerning the warrant exercise period to

state that the warrants "will become exercisable 30 days after the Closing."  The "Closing" was

defined as the consummation of the merger between Kensington Capital and Legacy

QuantumScape.  In all subsequent versions of the Form S-4, that modified language about the

commencement of the warrant exercise period was not changed.

36.    On November 12, 2020, the Company publicly filed its final Form S-4

registration statement with the SEC, and Mr. Huber requested the SEC to accelerate its

effectiveness to that date.  The definitive prospectus, which became effective on November 12,

2020, stated in the initial section, "QUESTIONS AND ANSWERS ABOUT THE BUSINESS

COMBINATION," at page 9 (in answer to the fifth question), that "[t]he Kensington Warrants

will become exercisable 30 days after the Closing [of the proposed business combination with

QuantumScape]"  In the section titled "Description of Kensington's Securities," at page 237, the

definitive document repeated the language from the preliminary document:

> Each Kensington Warrant entitles the registered holder to purchase one share of
> Kensington Class A Common Stock at a price of $11.50 per share, subject to
> adjustment as discussed below, ***at any time commencing 30 days after the
> consummation of the initial business combination.*** (emphasis added).

37.     The definitive prospectus and proxy statement noticed a special meeting of

shareholders on November 25, 2020, to vote on the business combination between Kensington

Capital and QuantumScape.  It further indicated that the business combination would close and

be consummated "promptly following the special meeting of stockholders, provided that all other

conditions to the Closing have been satisfied or waived."

38.     On November 19, 2020, Mr. Huber signed and filed a supplement to the Form S-4

on behalf of the Kensington Capital which described certain changes from the preceding versions

of the Form S-4 to the securities to be issued in the merger.  The supplement did not indicate any

change to the information required by Item 202 of Regulation S-K that the warrants "will

become exercisable 30 days after the Closing."

39.     On November 25, 2020, the shareholders of Kensington Capital approved the

business combination, and the Closing occurred the same day.  Consequently, the warrants were

to become exercisable on December 25, 2020, subject to an effective registration statement being

filed with respect to the QuantumScape shares to be issued upon exercise.  QuantumScape's

registration statement for those shares and for the 50 million shares issued to PIPE (private

investment in public equity) investors at Closing for $10 per share became effective on

December 31, 2020.  "When issued" trading commenced immediately on the newly registered

shares, and the PIPE investors sold a large number of the newly registered shares in aftermarket trading on December 31, 2020 at over $70 per share.

40.    On December 2, 2020, five days after the Closing of the merger, QuantumScape made a post-Closing SEC filing in a Form 8-K, which described the merger that had closed on November 25, 2020.  Buried within the Form 8-K on page 19 in a section describing QuantumScape's securities was the following language: "each warrant … is exercisable at the later of any time commencing 30 days after the consummation of the Business Combination or one year after the closing of the Company's initial public offering…"  The next paragraph in that Form 8-K purported to incorporate by reference the ten-page description of the warrants set forth in the Form S-4 beginning at page 237, with the statement "subject to the foregoing paragraph, a description of the aforementioned warrants is included in the Proxy Statement in the section entitled 'Description of Kensington's Securities – Kensington Warrants' beginning on page 237 of the Proxy Statement, which is incorporated herein by reference."  That statement, however, was confusing and contradictory, as the Form S-4 at the time of the shareholder vote stated specifically at the referenced page 237 that the warrant exercise period begins "30 days after the consummation of the initial business combination."

41.    The "later of" language in the December 2, 2020 Form 8-K was introduced without any explanation or reference to the unambiguous 30-day statement at the referenced page 237 of the Form S-4 and was not identified as a correction or replacement of that statement or of the unambiguous statement at page 9 of the Form S-4 that the warrants "will become exercisable 30 days after the Closing."  Nor did the Form 8-K alert investors that a significant change was being made to the commencement date for exercise of the warrants expressed

unambiguously in every version of the Form S-4 and that the stated exercise period in the Form S-4 was being shortened without approval of the warrant holders.

42.    Moreover, the December 2, 2020 Form 8-K language was intentionally evasive -- rather than simply stating that the commencement date would be June 30, 2021, it described the commencement date as the "later of" two possible dates, giving the false impression that the date was not yet ascertainable.  In fact, as of December 2, 2020, each of the possible dates had been determined by the occurrence of their stated conditions (Kensington Capital's IPO and the closing of the business combination), but the Form 8-K did not identify either of those dates or the resulting exercise date.  Using the "later of" language without even identifying the date upon which QuantumScape would allow exercise obfuscated the fact that QuantumScape was changing its position from the unambiguous statement of the exercise commencement date described in the Form S-4.

43.    According to Eduardo Royes, a managing director of ICR, Inc., the global public relations firm that had been engaged by Kensington Capital, an investor relations website that ICR launched sometime after the Closing stated in an "FAQ" that "the public warrants will become exercisable on June 30, 2021."  According to Mr. Royes, this language "was drafted and approved by legal the week of deal close."  The Company and its agents knew and understood before the Closing, however, that the only statement in the Form S-4 concerning the commencement date for exercise of the warrants in connection with the business combination stated that they would "become exercisable 30 days after the Closing."  The Company and its agents deliberately left that statement unmodified in all versions of the Form S-4 until after the shareholders voted to approve the transaction and it closed.  The Company never announced that it was correcting or amending the unambiguous statement in the Form S-4, which is the

document that required the exercise period of the warrants in connection with the business combination to be described and to which investors would be expected to look for that information, and a reasonable investor would not have reason to look to an investor relations website for information contradicting the unambiguous description in the Form S-4 that the warrants "will become exercisable 30 days after the Closing."

## IV.    Defendant Knew The Terms Of The Warrant Agreement And Intentionally Stated In The Form S-4 That The Warrants Will Become Exercisable 30 Days After Closing.

44.    The Company knew the terms of its original warrant agreement and knew that the Form S-4 stated that the warrant exercise period would commence 30 days after the Closing. Justin Mirro and Dan Huber, who were responsible for the Form S-4, and the attorneys at Hughes Hubbard and Wilson Sonsini who acted as agents for Kensington Capital or Legacy QuantumScape, were familiar with the terms of the warrant agreement and the information required to be provided in the Form S-4.

45.    Each of these agents made the decision about the information to be included in the Form S-4 concerning the warrant exercise period, information that was provided deliberately because it was required to be included in the Form S-4 by Item 202 of Regulation S-K.  The Company had multiple opportunities to revise the statement about when the warrants would become exercisable and could have done so before the shareholder vote and closing of the transaction on November 25, 2020, but it made no substantive change to it.

46.    The unequivocal statement made by the Company in the Form S-4 that the warrant exercise period would commence 30 days after the Closing was made by agents – Justin Mirro, Dan Huber, Charles Samuelson, and the other attorneys at Hughes Hubbard and Wilson

Sonsini -- with knowledge of the Company's rights under the warrant agreement, and with knowledge that the "later of" language in the original agreement was not part of their description of the warrant exercise period that was required by SEC rules to be included in the Form S-4.

47.    The Company knew that one year after its initial public offering was a fixed date – June 30, 2021 – which was much later than the scheduled closing date of November 25, 2020. If the Company intended to make June 30, 2021, the commencement date for exercise of the warrants, it knew it was required to provide that date in the description of the warrants in the Form S-4.

48.    During the period between the filing of the preliminary version of the Form S-4 on September 21, 2020 and the Closing on November 25, 2020, Kensington Capital and its investor relations consultant, ICR, fielded questions from investors about the commencement date of the exercise period of the warrants in connection with the transaction.  Eduardo Royes, the ICR managing director who worked with Kensington Capital, is described on the ICR Strategic Communications and Advisory website as "a Managing Director in ICR's Energy Investor Relations practice, responsible for leading ICR's IR efforts in helping companies tied to the energy transition tell their story.  His focus is on Renewables & Energy Technology, including Electric Vehicles, while he also supports the team's traditional Oil & Gas coverage. He has executed on IPOs, SPAC transactions and detailed IR programs.  He has more than 12 years of capital markets and energy industry experience as a research analyst.  During this time, Eduardo developed a reputation for being detail-oriented and highly thoughtful…"

49.    On October 2, 2020, Mr. Royes forwarded an investor inquiry concerning the exercise period of the warrants to Mr. Huber, Kensington Capital's CFO, and asked "can you please assist with the technical answers…"  In response, Mr. Huber instructed "In the S-4…"

16

Following Mr. Huber's guidance, the "detail-oriented and highly thoughtful" Mr. Royes directed

inquiring investors to the Form S-4, and specifically quoted to them the statement on page 9 that

"the Kensington Warrants will become exercisable 30 days after consummation of the Business

Combination."   Mr. Royes and Mr. Huber understood that the Form S-4 identified an

unequivocal date on which the newly merged company would allow the warrants to become

exercisable -- 30 days after the Closing -- and therefore directed investors to the Form S-4 for a

definitive answer to their inquiry about the commencement date.  Mr. Huber and the Company

thus knew that investors were relying on that statement in the Form S-4 to make investment

decisions with respect to the Company's securities.

      50.     On November 16, 2020, Mr. Huber received an email from an investor pointing

out the discrepancy between the "later of" language in the warrant agreement "posted when

KCAC had its IPO in June" and the statement "in the definitive proxy statement filed on

November 12 …that "The Kensington Warrants will become exercisable 30 days after the

Closing…"  The email further stated "So which is it?  Kensington IPOed in June, so 12 months

from then in [sic] June 2021.  If the merger in question closes after the vote on November 25th,

then according to the proxy, the warrants will be exercisable towards the end of December."  On

November 19, 2020, three days after receiving this email, Mr. Huber filed the Company's

supplement to the Form S-4 but made no change to the 30-day language and intentionally

retained the statement that the "warrants will become exercisable 30 days after the Closing,"

confirming that the Company and its agents understood that the Form S-4 at all times stated that

the warrants will become exercisable 30 days after the Closing and always intended it to so state.

      51.     In an affidavit dated January 11, 2021, filed in litigation in New York Supreme

Court concerning the exercise period of the warrants, CEO Mirro asserted that he had personal

knowledge of the matters he was describing, which included the terms of the warrant agreement. He asserted -- in the face of the Company's statement in the Form S-4 that the warrants "will become exercisable 30 days after the Closing" -- that neither the board of Kensington Capital nor "the Kensington management team, which I lead as the Chief Executive Officer, decided to waive or amend any condition in the Warrant Agreement relating to the exercise date of the warrants." Mr. Mirro's affidavit did not deny, however, that the Company's statement in the Form S-4 -- that the warrants "will become exercisable 30 days after the Closing" of the business combination — was knowing and intentional. Mr. Mirro's sworn statement about undisclosed personal intentions or decisions is inconsistent with the Company's knowing statement and intent reflected in its unambiguous description of warrants as required in the Form S-4. Through Messrs. Mirro and Huber, QuantumScape deliberately described the warrants as becoming exercisable 30 days after the Closing with knowledge of its rights and obligations, and knowingly retained the 30-day statement in all versions of the Form S-4, rather than replacing it with a statement that the warrants would become exercisable on June 30, 2021.

## V.    Plaintiffs Reasonably Relied On The Statement In The Form S-4 To Make Investment Decisions And Suffered Damages.

52.    Plaintiff Jakubiak reasonably relied on the statement in the Form S-4 concerning the date upon which the warrants would become exercisable – 30 days after Closing of the business combination -- to purchase warrants and to enter into related securities transactions to hedge his purchase of warrants through short sales of the Company's stock and sales of call options. Between October 20, 2020 and December 8, 2020, Plaintiff Jakubiak, as trustee for the Jeffrey Jakubiak Revocable Living Trust, purchased 12,000 warrants. Plaintiff Jakubiak also purchased 1,500 warrants in his individual retirement account on December 9, 2020.

53.    In reasonable reliance on the statement in the Form S-4 that the warrants would become exercisable 30 days after the Closing of the business combination, the BJI Plaintiffs purchased and retained 24,800 warrants during the period from September 22, 2020 through November 30, 2020.  Also in reliance on that statement, the BJI Plaintiffs entered into related securities transactions for hedging purposes involving, among other things, the short sale of Kensington Capital stock, which the BJI Plaintiffs expected to be able to deliver upon exercise of the warrants in the time set forth in the Form S-4.

54.    In reasonable reliance on the statement in the Form S-4 that the warrants would become exercisable 30 days after the Closing of the business combination between Kensington Capital and Legacy QuantumScape, Plaintiff Assante purchased 2900 warrants between November 27, 2020 and December 10, 2020, when he learned that QuantumScape had told another warrant holder that it would not permit the warrants to be exercised until June 30, 2021. Plaintiff Assante also entered into related securities transactions for hedging purposes in reliance on the statement in the Form S-4.

55.    Plaintiff Wilschke purchased 100 warrants on September 9, 2020.  In reasonable reliance on the statement in the Company's Form S-4 filings that the warrants would become exercisable 30 days after the Closing of the business combination, Plaintiff Wilschke purchased an additional 660 warrants between September 23, 2020 and November 6, 2020.

56.    In reasonable reliance on the statement in the Form S-4 that the warrants would become exercisable 30 days after Closing of the business combination, Plaintiff Headwaters Holdings purchased and held 108,000 warrants between September 24, 2020 and December 10, 2020, when it learned from an email from Eduardo Royes that QuantumScape would not allow the warrants to be exercised until June 30, 2021.

19

57.    Also in reliance on the statement in the Form S-4, Plaintiff Headwaters Holdings entered into securities transactions for hedging purposes involving, among other things, the short sale of Kensington Capital stock, which Plaintiff Headwaters Holdings expected to be able to deliver upon exercise of the warrants 30 days after the Closing.

58.    Plaintiffs' reliance on the description in the Form S-4 of the exercise period of the warrants in connection with the QuantumScape business combination was reasonable.  Eduardo Royes, the "detail oriented and highly thoughtful" managing director of ICR who had been in the investment business for decades, understood from the Form S-4 that the warrants "will become exercisable 30 days after the Closing" of the transaction.  Likewise, Mr. Huber, the CFO of Kensington Capital, understood that the Form S-4 described the exercise period as commencing 30 days after Closing.  As the Company could provide for earlier exercise of the warrants without the consent of the warrant holders, an investor would reasonably rely on the Company's description of the exercise period of its own warrants in connection with QuantumScape transaction that was required to be included in the Form S-4.

59.    That the Company would allow exercise of the warrants 30 days after the Closing appeared to the reasonable investor to be advantageous to the surviving company from a financial perspective.  QuantumScape is a development stage company that will not have any source of revenue until 2024 at the earliest and continues to need a constant source of new capital.  Immediate exercise of the warrants would have provided the Company with needed capital at $11.50 per share, a much better price than it was receiving from its sale of 50 million shares at $10 per share to the PIPE investors in conjunction with the business combination.

60.    Before the closing of the transaction on November 25, 2020, the Company knew that the Form S-4 described the exercise period of the warrants in connection with the proposed

QuantumScape business combination only on pages 9 and 237, and that the description was clear and unequivocal in setting the commencement date for exercise at 30 days after the Closing. Only after the transaction closed, and when faced with a preliminary injunction motion filed in a different action in New York Supreme Court, did the Company assert that footnotes to the pre-closing period financial statements of the SPAC (attached as an appendix) and the original warrant agreement (filed without explanation as an exhibit to the Form S-4) somehow disclosed, in contradiction to the unambiguous description at pages 9 and 237 of the Form S-4 itself, that the "later of" condition would be in effect after the transaction closed.  The Company, however, had pointed inquiring investors before the closing only to the statement in the Form S-4 that the warrants will become exercisable 30 days after the Closing.  The Company offered no evidence in the preliminary injunction proceedings that any of its executives or agents understood before the closing of the transaction that the Form S-4 disclosed any exercise commencement date for the warrants other than its unambiguous description that the warrants will become exercisable 30 days after the Closing.

61.    As the SEC recognizes in requiring the Form S-4 to describe the exercise period of warrants, a reasonable investor would look to the required description of the surviving company's securities in the Form S-4 to find the pertinent information about the exercise period of the warrants in connection with a proposed business combination.  In the face of the unambiguous statements at pages 9 and 237 of the Form S-4 describing the exercise period of the warrants in connection with the QuantumScape transaction, a reasonable investor would believe those statements to be accurate and would have no reason to search elsewhere for information that contradicted them, either in pre-transaction historical financial statements of the special

purpose acquisition company that were irrelevant to the prospects of the surviving company, or in subsequently filed post-closing documents.

62.     Like the "detail oriented and highly thoughtful" ICR managing director Royes, a reasonable investor would look to and trust the description of the warrants required to be in the Form S-4 to determine the exercise period of the warrants in connection with the business combination and would read that document to describe the warrants as being exercisable 30 days after the Closing.  Moreover, absent an announcement that there was the need for a correction or replacement of the unambiguous description of the exercise period in the Form S-4, the document that was required by the SEC to describe the exercise period of the warrants, a reasonable investor would have no reason to search post-closing filings or an investor website for contradicting information.  Shortly after the preliminary injunction proceedings in New York Supreme Court in January 2021, the Company issued a press release announcing that it would allow the warrants to be exercised beginning on March 5, 2021, four months earlier than the June 30, 2021 date.

63.     On December 10, 2020, Plaintiff Jakubiak sent an email to the investor relations department at QuantumScape indicating that he had purchased warrants after reading the proxy statement and the language indicating the warrants were exercisable 30 days after consummation of the business combination.  Plaintiff Jakubiak received a response stating that the warrants would not become exercisable 30 days after the Closing and that the exercise period would instead commence on June 30, 2021, "as listed on the IR FAQs page (which was drafted and approved by legal the week of deal close)."  When Plaintiff Jakubiak again pointed out the 30-day language in the Form S-4 and his reliance on it, the Company asserted that "[t]he difference is that most deals close more than one year after the SPAC IPO'ed.  Kensington's official IPO

was June 30, 2020, and hence 'the later of' language in this case actually is applicable given KCAC was quick to do a deal."  The Company never explained, however, why the unambiguous description of the warrants in the Form S-4 stated only that the warrants "will become exercisable 30 days after the Closing."

64.    Plaintiff Jakubiak determined that the cost of his hedging transactions and the risks attendant with waiting more than six months to exercise the warrants would exceed any potential and uncertain value of the warrants on June 30, 2021, and he began to unwind his positions taken in reliance on the 30-day description in the Form S-4 in an effort to mitigate his losses and avoid the substantial increased risk of holding the warrants through that date.

65.    Plaintiff Jakubiak suffered over $200,000 in lost profits, that is profits that he would have made had he been able to exercise the warrants pursuant to the 30-day description in the Form S-4.  Plaintiff Jakubiak further suffered a loss of over $400,000 on the securities transactions executed for hedging purposes, which he entered into with the understanding that the warrants would be exercisable 30 days after Closing, but which he could not maintain for the additional six-months until June 30, 2021.

66.    The BJI Plaintiffs determined, after learning in the second week of December that QuantumScape would not allow exercise of the warrants 30 days after the Closing as set forth in the Form S-4, but rather would require warrant holders to wait until June 30, 2021 before being able to exercise the warrants, that the risks attendant with waiting more than six months to exercise the warrants would exceed any potential and uncertain value of the warrants on June 30, 2021, and the costs of maintaining the hedging positions would be prohibitive.  Consequently, the BJI Plaintiffs subsequently sold the position in the warrants and unwound the hedging positions.

67.     The BJI Plaintiffs suffered over $700,000 in lost profits, that is, profits that would have been made had Plaintiffs been able to exercise the warrants pursuant to the 30-day description in the Form S-4.  The BJI Plaintiffs further suffered a loss of $1.96 million on the hedging positions entered into with the understanding that the warrants would be exercisable 30 days after Closing, but which ultimately could not be maintained for the additional six-months until June 30, 2021.

68.     Plaintiff Assante suffered over $85,000 in lost profits, that is, profits that he would have made had he been able to exercise the warrants pursuant to the 30-day description in the Form S-4.  Plaintiff Assante further suffered a loss of over $9,000 in short borrow fees on the hedging positions that he entered into with the understanding that the warrants would be exercisable 30 days after Closing, but which he could not maintain for the additional six-months until June 30, 2021.

69.     Plaintiff Wilschke suffered $37,504 in lost profits, that is, profits that he would have made had he been able to exercise the warrants pursuant to the 30-day description in the Form S-4.

70.     Plaintiff Headwaters Holdings suffered $3,023,211 in lost profits, that is, profits that it would have made had it been able to exercise the pursuant to the 30-day description in the Form S-4.   Plaintiff Headwaters Holdings further suffered an additional loss of over $3 million from transactions it was forced to undertake to manage the increased risk to its existing positions resulting from QuantumScape's delay of the exercise period to June 30, 2021, including (i) the forced buy-to-cover of 19,749 shares of QuantumScape stock at prices exceeding that of Headwaters Holdings short position in warrants established before the Form S-4 filings, for a

total loss of $611,433, (ii) losses on option trades to maintain a hedged position in the warrants, resulting in a loss of $2,232,842 and (iii) stock loan charges on the hedge positions of $270,431.

## CAUSES OF ACTION

### COUNT I

### (For Breach of Contract – Waiver of Condition)

71.　Plaintiffs reallege the preceding paragraphs as if fully set forth here.

72.　The warrant represents a contract between the Company, the warrant agent, and the holders of warrants.

73.　At the time the Form S-4s were filed between September 21, 2020 and the closing of the QuantumScape business combination on November 25, 2020, the Company, through its executives and legal and financial advisors, was aware of the terms of the original warrant agreement relating to the commencement of the exercise period.  Rather than provide, however, that the warrants would become exercisable upon "the later of" 30 days after the consummation of its initial business combination or one year after Kensington Capital's initial public offering (*i.e.*, June 30, 2021), the Defendant stated in all versions of the Form S-4 that the warrants will become exercisable 30 days after the Closing of the QuantumScape business combination.

74.　The information required to be provided in the Form S-4 about the exercise date of the warrants in connection with the business combination with QuantumScape was knowingly and deliberately provided by the Company's CEO, CFO, and legal advisors and agents, who were familiar with the exercise period set forth in the original warrant agreement.

75.     While knowing the terms of the original warrant agreement, the Company nonetheless intended to set forth the exercise commencement date in the Form S-4 and knowingly stated that the warrants "will become exercisable 30 days after the Closing."

76.     Accordingly, the Company waived any 12-month condition that would have extended the exercise commencement date to June 30, 2021, and the Company could not reimpose that condition and shorten the exercise period after the Closing of the business combination.

77.     The contract therefore permitted warrant holders, at their option, to exercise their warrants to purchase one share of Class A common stock of the Company at a price of $11.50 for each warrant, at any time during the exercise period commencing 30 days after the consummation of the business combination with QuantumScape and expiring five years after the business combination.

78.     The business combination with QuantumScape occurred on November 25, 2020, and thus, the warrant exercise period commenced on December 25, 2020, which is 30 days after the Closing.

79.     Plaintiffs suffered damages as a result of QuantumScape's refusal to allow exercise of the warrants 30 days after the Closing.

### COUNT II

### (For Breach of Contract – As Amended)

80.     Plaintiffs reallege the preceding paragraphs as if fully set forth here.

81.     The warrant represents a contract between the Company, the warrant agent, and the holders of warrants.

82.    The warrant agreement contains an "Amendments" clause at Section 9.8, which

states in relevant part:  "This Agreement may be amended by the parties hereto without the

consent of the Registered Holder for the purpose of curing any ambiguity, or curing, correcting

or supplementing any defective provision contained herein or adding or changing any other

provisions with respect to matters or questions arising under the Agreement as the parties may

deem necessary or desirable and that the parties deem shall not adversely affect the interest of the

Registered Holders.  All other modifications or amendments, including any amendment to

increase the Warrant Price or shorten the Exercise Period, shall require the vote or written

consent of the Registered Holders of 50% of the then outstanding Public Warrants.

Notwithstanding the foregoing, the Company may lower the Warrant Price or extend the duration

of the Exercise Period pursuant to Section 3.1 and 3.2, respectively without the consent of the

Registered Holders."

83.    The Company's Form S-4s for the business combination with QuantumScape

filed between September 21, 2020 and the closing of the transaction on November 25, 2020 all

stated unambiguously that the warrants will become exercisable 30 days after the Closing.  The

Form S-4 did not provide that the exercise period for the warrants in connection with the

business combination being proposed would begin on June 30, 2021, and it did not state that the

exercise period would begin 12 months after the SPAC shell company went public.

84.    At the time the Form S-4s were filed, the Company, through its executives and

legal and financial advisors, was aware of the terms of the original warrant agreement relating to

the commencement of the exercise period.  Rather than provide, however, that the warrants

would become exercisable on June 30, 2021, *i.e.*, upon "the later of" 30 days after the

consummation of the QuantumScape transaction or one year after Kensington Capital's IPO, the

Company knowingly abandoned the "later of" language.  The Company thereby knowingly amended the warrant agreement and extended the duration of the exercise period (so that it would begin on December 25, 2020, rather than the later date of June 30, 2021, in each case, expiring no later than November 25, 2025), as it was permitted to do pursuant to Section 9.8 of the warrant agreement.

85.    Having lengthened the exercise period by making the warrants exercisable 30 days after the Closing of the business combination, the Company could not, without a vote of the warrant holders, thereafter shorten the exercise period by delaying the commencement of exercise to June 30, 2021.

86.    Plaintiffs suffered injury and damage because of QuantumScape's breach of its commitment that the warrants "will become exercisable 30 days after the Closing."

## COUNT III

## (For Breach of Contract – Promissory Estoppel)

87.    Plaintiffs reallege the preceding paragraphs as if fully set forth here.

88.    The warrant represents a contract between the Company, the warrant agent, and the holders of warrants.

89.    The Company's Form S-4s filed between September 21, 2020 and the closing of the business combination on November 25, 2020 contain a clear and unambiguous promise that the warrants "will become exercisable 30 days after the Closing…"  The Company was aware of the importance of the accuracy of this information, as the exercise period of the warrants was specifically required to be disclosed in the Form S-4s.

90.    At the time this statement was made, the Company, through its CFO, Dan Huber, knew that investors had made inquiries concerning when the warrants would become

exercisable, directed that investors be referred to the language in the Form S-4 stating that the warrants "will become exercisable 30 days after the consummation of the Business Combination," and knew that investors were relying on that information to make investment decisions.

91.    Notwithstanding such knowledge, the Company did not change the language of the Form S-4s stating that the "warrants will become exercisable 30 days after the Closing."

92.    Because the information was required to be disclosed in the Form S-4, a document intended to allow investors to make fully informed investment decisions about a company's securities, and because the investors had made specific inquiries about the exercise date, the Company was aware, and could reasonably foresee, that investors would rely to their detriment on the description of the exercise period as commencing 30 days after the Closing in the Form S-4.

93.    Plaintiffs in reliance on the statement in the Form S-4 that the warrants "will become exercisable 30 days after the Closing" purchased warrants and implemented related hedging transactions.  When the Company subsequently extended the commencement date of the exercise period for six months to June 30, 2021, the Plaintiffs suffered lost profits and consequential damages.

94.    As a result, the Company is contractually bound by its promise in the Form S-4 concerning the exercise of the warrants, and accordingly, breached its agreement by refusing to allow the warrants to be exercised pursuant to the 30-day description set forth in the Form S-4.

95.    Plaintiffs are entitled to damages to compensate them for any and all lost profits and other harm caused by the Company's breach.

## COUNT IV

### (For Violation of §10(b) of the Exchange Act and Rule 10b-5 Against Defendant)

96.      Plaintiffs reallege the preceding paragraphs as if fully set forth here and allege this Count in the alternative to Counts I through III.

97.      In its Form S-4s filed between September 21, 2020 and November 25, 2020 to register the Company's securities in connection with the business combination between Kensington Capital and Legacy QuantumScape and used as the proxy statement to solicit votes to approve the transaction, Defendant stated that the warrants would become exercisable 30 days after the Closing of the business combination.  Defendant repeated this statement several times in its proxy statement/prospectus as follows:

- On September 21, 2020, when Defendant filed Form S-4 with the SEC in preliminary form;

- On October 23, 2020 when Defendant filed Amendment No. 1 to Form S-4 with the SEC;

- On November 9, 2020 when it filed Amendment No. 3 to Form S-4 with the SEC (Amendment No. 2 filed on November 3 consisted solely of exhibits, but the filing did not contain a new version of the proxy statement/prospectus or change the description of the exercise date of the warrants in the transaction);

- On November 10, 2020 when it filed Amendment No. 4 to Form S-4 with the SEC; and

- On November 12, 2020 when it filed with the SEC the final Form S-4 and a final prospectus.

Kensington Capital's CFO, Daniel Huber, requested on behalf of the Company that the SEC accelerate the effectiveness of the final Form S-4 registration statement on November 12, 2020, and it became effective that day with the statement that the warrants will become exercisable 30 days after closing of the transaction on November 25, 2020.

98.     On November 19, 2020, Mr. Huber filed a post-effective supplement to the Form S-4, but that supplement did not change the language indicating that the warrants would become exercisable 30 days after the Closing.

99.     At the time it made the statement, Defendant knew the terms of the original warrant agreement and knew that the description in the Form S-4s -- that the warrants would become exercisable in the context of the QuantumScape business combination 30 days after the Closing -- did not include the "later of" condition in the original warrant agreement.

100.    The date on which the warrants would become exercisable in the context of the proposed QuantumScape business combination was a material fact because a reasonable investor would consider it significant in making an investment decision.

101.    After the Closing, QuantumScape took the position that it had not intended to permit the warrants to be exercisable 30 days after the Closing of the business combination and that the warrants could not be exercised until June 30, 2021.  Defendant's statement in the Form S-4s that the warrants will become exercisable 30 days after the Closing of the QuantumScape business combination, consequently, was misleading.

102.    Defendant acted with scienter by knowingly or recklessly describing the warrant exercise period, information that is specifically required to be set forth in the Form S-4, as commencing 30 days after the Closing, intending that investors would rely on the statement to make investment and voting decisions in connection with the business combination.  Defendant and its executives and agents knew at all times that the Form S-4s stated the warrants would become exercisable 30 days after the Closing and directed investors to that language in the Form S-4 in response to inquiries about when the warrants would become exercisable.

Notwithstanding its knowledge that the Form S-4s described the exercise period as commencing 30 days after the Closing, the Company never amended that language before the Closing.

103.    After Closing, the CEO, Justin Mirro stated that neither he nor management ever intended to waive the later of condition in the original warrant agreement and thus to allow exercise of the warrants 30 days after the Closing as stated in the Form S-4.

104.    Plaintiffs reasonably relied on Defendant's statement that the warrants would become exercisable 30 days after the Closing, and in reliance on that statement entered into purchase and sale transactions of securities of the Company.  The information concerning the exercise period was set forth precisely where reasonable investors would expect to find it, at page 9 in the Q&A section and at pages 237 through 243 in the section entitled "Description of the Warrants," and a reasonable investor would not search outside that section for potentially contradictory information.  Indeed, the "detail oriented and highly qualified" managing director of IRC who handled investor relations for Kensington Capital determined, from reading the Form S-4, that the warrants will become exercisable 30 days after the Closing and directed investors to that language.

105.    Plaintiffs suffered monetary damages and lost profits when Defendant took the position after the Closing that the warrants would not be exercisable until June 30, 2021.

106.    Defendant's actions violated Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder.  Plaintiffs are entitled to damages to compensate them for any and all harm caused by Defendant's violation.

**COUNT V**

**(For Common Law Fraud)**

107.    Plaintiffs reallege the preceding paragraphs as if fully set forth here and allege this Count in the alternative to Counts I through III.

108.    In its Form S-4s filed between September 21, 2020 and November 25, 2020 to register the Company's securities in connection with the business combination between Kensington Capital and Legacy QuantumScape and used as a proxy statement to solicit votes to approve the transaction, Defendant stated that the warrants would become exercisable 30 days after the Closing of the business combination. Defendant repeated this statement several times in its proxy statement/prospectus as follows:

- On September 21, 2020, when Defendant filed Form S-4 with the SEC in preliminary form;

- On October 23, 2020 when Defendant filed Amendment No. 1 to Form S-4 with the SEC;

- On November 9, 2020 when it filed Amendment No. 3 to Form S-4 with the SEC (Amendment No. 2 filed on November 3 consisted solely of exhibits, but the filing did not contain a new version of the proxy statement/prospectus or change the description of the exercise date of the warrants in the transaction);

- On November 10, 2020 when it filed Amendment No. 4 to Form S-4 with the SEC; and

- On November 12, 2020 when it filed with the SEC the final Form S-4 and a final prospectus.

Kensington's CFO, Daniel Huber, requested on behalf of the Company that the SEC accelerate the effectiveness of the final Form S-4 registration statement on November 12, 2020, and it became effective that day with the statement that the warrants will become exercisable 30 days after closing of the transaction on November 25, 2020.

109.    On November 19, 2020, Defendant filed a post-effective supplement to the Form S-4, but that supplement did not change the language indicating that the warrants would become exercisable 30 days after the Closing.

110.    At the time it made the statement, Defendant knew the terms of the original warrant agreement and knew that its description in the Form S-4s -- that the warrants would become exercisable in the context of the QuantumScape business combination 30 days after the Closing -- did not include the "later of" condition in the original warrant agreement.

111.    After the Closing, QuantumScape took the position that it had not intended to permit the warrants to be exercisable 30 days after the Closing and that the warrants could not be exercised until June 30, 2021.  Defendant's statement in the Form S-4s that the warrants will become exercisable 30 days after the Closing of the QuantumScape business combination, consequently, was misleading.

112.    Defendant acted with scienter by knowingly or recklessly describing the warrant exercise period, information that is specifically required to be set forth in the Form S-4, as commencing 30 days after the Closing, intending that investors would rely on the statement to make investment and voting decisions in connection with the business combination.  Defendant and its executives and agents knew that the Form S-4s stated the warrants would become exercisable 30 days after the Closing and directed investors to that language in the Form S-4 in response to inquiries about when the warrants would become exercisable.  Notwithstanding its knowledge that the Form S-4s described the exercise period as commencing 30 days after the Closing, the Company never amended that language before the Closing.

113.    Defendant intended for others to rely on the Form S-4 statement, as Defendant directed investors to that language in the Form S-4 in response to inquiries about when the warrants would become exercisable.

114.    After Closing, the CEO, Justin Mirro stated that neither he nor management ever intended to waive the later of condition in the warrant agreement and thus to allow exercise of the warrants 30 days after the Closing as stated in the Form S-4.

115.    Plaintiffs reasonably relied on Defendant's statement that the warrants would become exercisable 30 days after the Closing, and in reliance on that statement entered into purchase and sale transactions of securities of the Company.  The information concerning the exercise period was set forth precisely where reasonable investors would expect to find it, at page 9 in the Q&A section and at pages 237 through 243 in the section entitled "Description of the Warrants," and a reasonable investor would not search outside that section for potentially contradictory information.  Indeed, the "detail oriented and highly qualified" managing director of IRC who handled investor relations for Kensington Capital determined, from reading the Form S-4, that the warrants will become exercisable 30 days after the Closing and directed investors to that language.

116.    Plaintiffs suffered monetary damages and lost profits when Defendant took the position after the Closing that the warrants would not be exercisable until June 30, 2021.

117.    Plaintiffs are entitled to damages resulting from their reasonable reliance on Defendant's statement that the warrants will become exercisable 30 days after the Closing.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

A.     Declaring that the Defendant has breached its contractual obligations by failing to allow the exercise of the warrants issued by the Company beginning 30 days after the consummation of its business combination on November 25, 2020; or in the alternative, declaring that Defendant has violated §10(b) of the Securities Exchange Act and Rule 10b-5, and committed common law fraud;

B.     Awarding Plaintiffs damages resulting from Defendant's refusal to allow exercise of the warrants beginning 30 days after the November 25, 2020 consummation of the business combination between Kensington Capital and QuantumScape;

C.     Awarding Plaintiffs reasonable attorneys' fees and costs; and

D.     Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

Dated: Great Neck, New York
        January 21, 2022

Respectfully submitted,

**SHAHMOON KELLER PLLC**

  /s/ *Gregory E. Keller*
Gregory E. Keller
gkeller@shahmoonkeller.com
Carol S. Shahmoon
cshahmoon@shahmoonkeller.com

One Great Neck Road, Suite 7
Great Neck, NY 11021
Tel: (646) 517-4399
Fax: (646) 880-9359

*Counsel for Plaintiffs Jeffrey Jakubiak, BJI Financial Group Inc., Brian Walsh,, Michael Assante, John Wilschke, and Headwaters Holdings LLC.*

4862-7226-7017, v. 6