UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                   :
JEFFREY JAKUBIAK, et al.,           :
                       Plaintiffs,   :
                                     :           20 Civ. 10842 (LGS)
               -against-               :
                                     :         **OPINION AND ORDER**
QUANTUMSCAPE CORPORATION,       :
                           Defendant.  :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

         This action centers around a dispute over the correct commencement date for the exercise
of warrants issued by Defendant QuantumScape Corporation ("QuantumScape").  Plaintiffs
Jeffrey Jakubiak, BJI Financial Group Inc., Brian Walsh, Michael Assante and Headwaters
Holdings LLC are investors who purchased the warrants.  The Consolidated Amended Complaint
(the "Complaint") alleges (1) breach of contract in three counts based on theories of waiver,
amendment and promissory estoppel, (2) common law fraud and (3) federal securities fraud in
violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule
10b-5.  The parties cross-move for partial summary judgment.  For the reasons below, both
motions are granted in part and denied in part.

## I.     BACKGROUND

         The following undisputed facts are drawn from the parties' statements pursuant to
Federal Rule of Civil Procedure 56.1 and other submissions on these motions.  The facts are
undisputed except as noted.

### A.     The Parties

         Plaintiffs are all investors who purchased QuantumScape warrants.  Defendant
QuantumScape is a California technology company that develops lithium-metal solid-state

battery technology for use in electric vehicles.  Kensington Capital Acquisition Corporation

("Kensington") is a Delaware corporation and special purpose acquisition company ("SPAC")

that was created for the purpose of effecting a merger or other business combination and that

ultimately combined with QuantumScape.

     In connection with the relevant events, Kensington was represented by the law firm of

Hughes Hubbard & Reed ("Hughes Hubbard"), and QuantumScape was represented by the law

firm of Wilson Sonsini Goodrich & Rosati PC ("Wilson Sonsini").

### B.    Warrant Agreement

     Through an initial public offering ("IPO") on June 30, 2020, Kensington registered and

sold stock and warrants to raise money to purchase and combine with one or more businesses in

the automotive sector.  Kensington raised $230 million in its IPO, issuing units that consisted of

one share of common stock and one-half warrant, at $10 per unit.  One warrant entitled the

holder to purchase one share of common stock for $11.50.

     On the same day as its IPO, Kensington publicly filed a Form 8-K with the SEC that

attached a June 25, 2020, warrant agreement between Kensington and its warrant agent,

Continental Stock Transfer & Trust Company ("Continental") (the "Warrant Agreement").  The

Warrant Agreement states that the warrants may be exercised during the period commencing on

"the later of: (i) the date that is thirty (30) days after the first date on which the Company

completes a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or

similar business combination, involving the Company and one or more businesses (a 'Business

Combination'), and (ii) the date that is twelve (12) months from the date of the closing of the

Offering."  In other words, the Warrant Agreement states that the warrants may be exercised

starting on the later of the date that is (1) thirty days after the completion of a merger (which

ultimately was December 25, 2020) or (2) twelve months from Kensington's IPO (June 30, 2021).

####    C.    Form S-4s and Form 10-Q

On September 2, 2020, Kensington and QuantumScape entered into a business combination agreement.  Under this agreement, the two companies would merge; all of Kensington's shares would become QuantumScape's shares, and Kensington would change its name to QuantumScape.  On September 21, 2020, Kensington filed a Form S-4 with the SEC. The Form S-4 contains a "Proxy Statement/Prospectus/Information Statement," which describes the business combination and Kensington's securities, including the warrants.  The Form S-4 states in two places that the warrants would become exercisable thirty days after the closing of the combination.  In an introductory section of the Form S-4, titled "Questions and Answers About the Business Combination," one answer states, "The Kensington Warrants will become exercisable 30 days after the consummation of the Business Combination . . . ."  The "Description of Kensington's Securities" near the end of the Form S-4, states, "Each Kensington Warrant entitles the registered holder to purchase one share of Kensington Class A Common Stock at a price of $11.50 per share, subject to adjustment as discussed below, at any time commencing 30 days after the consummation of the initial business combination."

In contrast, the "later of" language -- in substance, that the warrants may be exercised starting on the later of (1) thirty days after the completion of a merger and *(2) twelve months from Kensington's IPO* (emphasis added) -- appears twice in Kensington's financial statements section of the S-4.  Prior to filing, drafts of the Form S-4 were circulated among Hughes Hubbard, Wilson Sonsini, Kensington, QuantumScape and others.  None of these parties made revisions that changed the language regarding the initial exercise of the warrants.

Kensington later filed four amendments to the Form S-4.  Similar variations of the "30-day" and "later of" language -- two statements each -- appear in Kensington's first, third and fourth amendments to the Form S-4 filed on October 23, 2020, November 9, 2020, and November 10, 2020, respectively.  The second amendment was created for an unrelated purpose and did not include any relevant language.  Each of the Form S-4s, including the second amendment, identify the Warrant Agreement as an exhibit and provide a link to it.

On November 16, 2020, Kensington filed a Form 10-Q with the SEC that uses only the "30-day" language.

**D.    Investor Inquiries**

On November 16, 2020, Dan Huber, Kensington's chief financial officer, received an email inquiry about the discrepancy between the "later of" provision in the Warrant Agreement and the "30-day" language in the fourth amendment to the Form S-4.  Minutes later, Mr. Huber forwarded the email to Charles Samuelson of Hughes Hubbard, Kensington's attorneys.  Mr. Samuelson discussed the email with Mr. Huber on November 16, 2020.  Within days, Mr. Samuelson discussed the email with QuantumScape's attorneys at Wilson Sonsini as well. Hughes Hubbard and Wilson Sonsini decided not to change the 30-day language in the Form S-4 until the December 2, 2020, Form 8-K, which would be filed after closing.  In making this decision, Mr. Samuelson consulted with Kensington management.  After the closing, QuantumScape continued to receive investor inquiries about the commencement of the warrant exercise period, including from Plaintiff Jakubiak.

**E.    Kensington's Merger with QuantumScape**

Kensington merged with QuantumScape on November 25, 2020.  As a SPAC, Kensington was required to obtain approval for the business combination from a majority of its

public shareholders.  On November 25, 2020, after the Kensington shareholders voted to

approve the business combination, the merger between Kensington and QuantumScape closed.

Upon closing of the merger, Kensington changed its name to QuantumScape, and Kensington's

common stock and warrants became common stock and warrants of QuantumScape.

QuantumScape stock and warrants began trading on the New York Stock Exchange on

November 27, 2020.  On or about the same day, QuantumScape published a frequently asked

questions page on its website stating that the warrants would be exercisable on June 30, 2021,

approximately seven months later.

On December 30, 2020, Defendant filed a registration statement, including a prospectus,

covering the shares of common stock to be issued upon the exercise of the QuantumScape

warrants.  Pursuant to QuantumScape's request, the SEC declared the registration statement

effective as of December 31, 2020, at 4:00 P.M.

On February 13, 2021, QuantumScape and Continental executed a written amendment to

the Warrant Agreement that provided that the exercise date would be accelerated from June 30,

2021, to March 5, 2021.

## II.   STANDARD

Summary judgment is appropriate where the record establishes that "there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  "An issue of fact is genuine if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d

Cir. 2020).[1]  "The burden of showing that no genuine factual dispute exists rests on the party

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations,
emphases, footnotes and citations are omitted.

seeking summary judgment, and in assessing the record to determine whether there is a genuine

issue as to a material fact, the court is required to resolve all ambiguities and draw all permissible

factual inferences in favor of the party against whom summary judgment is sought." *Id.* When

parties cross-move for summary judgment, the Court analyzes the motions separately, "in each

case construing the evidence in the light most favorable to the non-moving party." *Schwebel v.*

*Crandall*, 967 F.3d 96, 102 (2d Cir. 2020).

New York law applies to the state law claims because the parties cite New York cases or

federal cases applying New York law, and "such implied consent is sufficient to establish the

applicable choice of law." *Trikona Advisers Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017).

## III.    DISCUSSION

Both sides have filed motions for summary judgment in support of their view of the

correct commencement date of the warrant exercise period.  Defendant argues the "later of"

language controls and that the correct commencement date -- before Defendant voluntarily

moved the date up to March 5, 2021, through a written amendment -- was June 30, 2021.

Plaintiffs argue the "30-day" language controls and that the correct commencement date was

December 31, 2020.

### A.    Defendant's Motion for Partial Summary Judgment

Defendant moves for summary judgment and dismissal of the Complaint's fraud claims

(Counts IV and V) and breach of contract claims based on amendment and promissory estoppel

(Counts II and III).  Defendant does not move on the breach of contract claim based on waiver

(Count I).  For the reasons below, Defendant's motion for partial summary judgment is denied

with respect to Plaintiffs' common law fraud, federal securities fraud and breach of amended

contract claims and granted with respect to Plaintiffs' promissory estoppel claim.

### a. Common Law Fraud and Securities Fraud (Counts IV and V)

Defendant's motion for summary judgment is denied with respect to the common law and federal securities fraud claims.  First, as to the common law fraud claim, under New York law, "a fraud claim may not be used as a means of restating what is, in substance, a claim for breach of contract." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006); *accord FPP, LLC v. Xaxis US, LLC*, 764 F. App'x 92, 93-94 (2d Cir. 2019) (summary order).  However, New York recognizes three exceptions to the rule against duplicative claims: "where a claim for fraud is based on facts underlying breach of contract, the plaintiff must either: (i) demonstrate a legal duty separate from the duty to perform under the contract; or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Negrete v. Citibank, N.A.*, 759 F. App'x 42, 48 (2d Cir. 2019) (summary order) (New York law, citing *Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996)).

Here, QuantumScape owed Plaintiffs a legal duty independent of the duty to perform under the contract.  The disclosure obligation under the Securities Act of 1933 and the obligation to make accurate statements under the Exchange Act establish an independent duty to make accurate disclosures to prospective investors about the key features of the warrants, including the exercise date.  Regulation S-K requires, "If the securities described are to be offered pursuant to warrants or rights state: . . . [t]he period during which and the price at which the warrants or rights are exercisable." 17 C.F.R. § 229.202(c)(2).  Section 10(b) of the Exchange Act makes it illegal to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe." 15 U.S.C. § 78j(b).  Rule 10b-5, adopted by the SEC pursuant

to Section 10(b), prohibits any person from "mak[ing] any untrue statement of a material fact . . . in connection with the purchase or sale of any security."  17 C.F.R. § 240.10b-5(b).  Defendant argues that the Complaint does not adequately allege this duty, but the Complaint cites the relevant regulation when it describes this disclosure requirement, and this duty exists regardless of whether the Complaint pleads it.

"A legal duty independent of contractual obligations may be imposed by law as an incident to the parties' relationship . . . [when public] policy, not the parties' contract . . . gives rise to a duty of due care."  *Sommer v. Fed. Signal Corp.*, 593 N.E.2d 1365, 1369 (N.Y. 1992). "The Exchange Act was intended . . . to impose regular reporting requirements on companies whose stock is listed on national securities exchanges.  A fundamental purpose, common to these statutes, was to substitute a philosophy of full disclosure for the philosophy of caveat emptor and thus to achieve a high standard of business ethics in the securities industry."  *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 299 (S.D.N.Y. 2003).  The Exchange Act protects the integrity of public securities markets so that prospective investors can rely on the public disclosures about offered securities in deciding whether and how to trade in that security.  *See Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 390 (2014) ("The basic purpose of the [Exchange Act] is to insure honest securities markets and thereby promote investor confidence.").

The cases Defendant cites that find fraud claims duplicative of contract claims of non-performance are distinguishable because in this case, the fraud claims are based on allegedly false statements in public SEC filings, and Defendant had an independent duty under the securities laws to make accurate public disclosures about the material features of the warrants in these filings.  *See, e.g.*, *Bridgestone/Firestone, Inc.*, 98 F.3d at 15 (no securities law claim); *CSI*

8

*Inv. Partners II, L.P. v. Cendant Corp.*, 507 F. Supp. 2d 384, 426-28 (S.D.N.Y. 2007) (dismissing securities and common law fraud claims where the fraud claims were based on oral representations and assurances during the negotiation of a deal), *subsequently aff'd*, 328 F. App'x 56 (2d Cir. 2009).  For all of these reasons, Defendant is denied summary judgment on the state common law fraud claim.

Whether the federal securities fraud claim should be dismissed as duplicative is governed by federal law.  Defendant cites no federal law regarding dismissal of this claim, and the Court has not found any to support the idea that a federal securities fraud claim for making a misstatement about a characteristic of a security can or should be dismissed as duplicative of a breach of contract claim based on the the same characteristic.  Because Defendant had an independent duty under the securities laws to make accurate public disclosures about the proposed combination in the Form S-4s, Defendant's motion for summary judgment on the federal securities law claim is denied.

### b.  Breach of Contract -- As Amended (Count II)

Defendant's motion for summary judgment is denied with respect to Count II of the Complaint, titled "Breach of Contract -- As Amended."  Genuine issues of fact exist as to whether Kensington assented to amend its contract with the warrant holders through its conduct, such that Kensington's conduct modified the "later of" condition in the Warrant Agreement to allow earlier exercise of the warrants in December 2020, thirty days after closing.  Section 9.8 of the Warrant Agreement provides: "[t]his Agreement *may* be amended by the parties hereto without the consent of any Registered Holder for the purpose of curing any ambiguity, or curing, correcting or supplementing any defective provision contained herein or adding or changing any other provisions with

respect to matters or questions arising under this Agreement as the parties may deem necessary or desirable and that the parties deem shall not adversely affect the interest of the Registered Holders. . . ." (emphasis added).

An agreement can be modified by the parties' conduct. *CT Chems. (U.S.A.), Inc. v. Vinmar Impex, Inc.*, 613 N.E.2d 159, 162 (N.Y. 1993) ("Once a contract is formed, the parties may of course change their agreement by another agreement, by course of performance, or by conduct amounting to a waiver or estoppel."); *accord Axginc Corp. v. Plaza Automall, Ltd.*, 759 F. App'x 26, 28 (2d Cir. 2018) (summary order); *Dall. Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 783 (2d Cir. 2003) (quoting *CT Chems.*, 613 N.E.2d at 162). Waiver must be done "knowingly, voluntarily and intentionally." *Fundamental Portfolio Advisors, Inc. v. Tocqueville Asset Mgmt., L.P.*, 850 N.E.2d 653, 658 (N.Y. 2006). "[E]stoppel is imposed by law in the interest of fairness to prevent the enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party's words or conduct, has been misled into acting upon the belief that such enforcement would not be sought.*" Id.* at 659. Estoppel requires "evidence that a party was misled by another's conduct" and "that the party significantly and justifiably relied on that conduct to its disadvantage." *Id.*

After Kensington entered into the Warrant Agreement, Kensington filed four SEC disclosure documents -- the September 21, 2020, Form S-4 registration statement and three amendments throughout October and November 2020 -- that used the "later of" language in two places and the "30-day" language in two places. Kensington's potential amendment through this conduct is supported by several ratifications of this understanding by Continental, Kensington's warrant agent. For example, Kensington provided Continental a copy of the Form S-4 to review

on October 16, 2020.  On November 24, 2020, Continental informed an inquiring investor that the warrants could be exercised 30 days after the closing of the business combination.  Ana Gois, the Continental officer who signed the Warrant Agreement, also initially understood -- as late as December 4, 2020 -- that the warrants could be exercised 30 days after closing.  Based on this evidence, a reasonable jury could conclude that Kensington's conduct amounted to a waiver or estoppel, such that the earlier exercise of the warrants should be permitted.

Contrary to Defendant's argument, the Warrant Agreement does not specify the exclusive ways in which it can be amended.  Section 9.8 simply states that the Warrant Agreement may be amended by the parties -- most relevant here, Kensington -- without the consent of the warrant holders when such an amendment would not adversely affect the interests of warrant holders. There is no requirement that such an amendment be made in writing or signed by both parties, unlike the contracts at issue in Defendant's cited cases.  *See, e.g.*, *Golden Archer Invs., LLC v. Skynet Fin. Sys.*, 908 F. Supp. 2d 526, 532 (S.D.N.Y. 2012) (agreement explicitly states it could only be amended in writing and signed by both parties); *BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*, 778 F. Supp. 2d 375, 411 (S.D.N.Y. 2011) (same); *Deutsche Bank AG v. JPMorgan Chase Bank*, No. 4 Civ. 7192, 2007 WL 2823129, at *23 (S.D.N.Y. Sept. 27, 2007) (same), *aff'd*, 331 F. App'x 39 (2d Cir. 2009).  That QuantumScape and Continental later executed a written amendment to the Warrant Agreement that accelerated the exercise date from June 30, 2021, to March 5, 2021, does not mean amendment by writing was the only allowed method.

Consideration was not required for an amendment to the Warrant Agreement because New York law provides that "[a]n agreement, promise or undertaking to change or modify . . . any contract . . . shall not be invalid because of the absence of consideration, provided that the agreement, promise or undertaking changing, modifying, or discharging such contract . . . shall

11

be in writing and signed by the party against whom it is sought to enforce the change, modification or discharge, or by his agent." *See* N.Y. Gen. Oblig. Law § 5-1103.  Here, the Form S-4 and amendments to the Form S-4 constitute such writings signed by Kensington, the party against whom the change is sought to be enforced.

"[C]onstruing the evidence in the light most favorable to the non-moving party," a reasonable juror could find that Kensington's conduct modified the "later of" condition in the Warrant Agreement to allow earlier exercise*. See Schwebel*, 967 F.3d at 102.  Defendant's motion for summary judgment is denied with respect to Plaintiffs' amendment claim.

### c.   Breach of Contract -- Promissory Estoppel (Count III)

Defendant's motion for summary judgment is granted with respect to Plaintiffs' promissory estoppel claim.  In New York, a quasi-contract claim like promissory estoppel is "an obligation the law creates in the absence of any agreement." *Goldman v. Metro. Life Ins. Co.*, 841 N.E.2d 742, 746 (N.Y. 2005); *accord Exch. Listing, LLC v. Inspira Techs., Ltd.*, No. 22 Civ. 1889, 2023 WL 2403223, at *11 (S.D.N.Y. Mar. 8, 2023).  "The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." *Clark-Fitzpatrick, Inc. v. Long Island Rail Rd. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987); *accord Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 587 (2d Cir. 2006) (New York law); *Exch. Listing*, 2023 WL 2403223, at *11.

The promissory estoppel claim is dismissed because Defendant does not dispute the existence or validity of a contract between Defendant and Plaintiffs.  All parties agree that the Warrant Agreement establishes the contractual rights of the warrant holders.

Contrary to Plaintiffs' argument, the exception that plaintiffs may alternatively plead a quasi-contract claim alongside a breach of contract claim where there is a dispute over the "scope or enforceability of the putative contract" does not apply here.  Defendant disputes the term of the contract that defines the exercise period, but does not dispute the scope or enforceability of the agreement.  *See Goldman*, 841 N.E.2d at 746-47; *CUnet, LLC v. Quad Partners, LLC*, No. 16 Civ. 6327, 2017 WL 945937, at *7 (S.D.N.Y. Mar. 7, 2017).  Plaintiffs also argue that a party to a contract may claim that "it reasonably relied upon promises made after the contract," citing *Icebox-Scoops, Inc. v. Finanz St. Honoré, B.V.*, 676 F. Supp. 2d 100, 115 (E.D.N.Y. 2009) (New York law).  *Icebox-Scoops* is distinguishable because the promises there related to "issues on which the Agreement is silent," *see id.* at 113, while here, Plaintiffs' promissory estoppel claim is based on the argument that the statements in the Form S-4s contradicted language in the Warrant Agreement.

While the Complaint does not state a claim for promissory estoppel, the facts alleged may state a claim for equitable estoppel.  In contrast to promissory estoppel, equitable estoppel may result in the modification of an existing contract.  *See Eujoy Realty Corp. v. Van Wagner Commc'ns, LLC*, 4 N.E.3d 336, 344 (N.Y. 2013).  But the Complaint does not assert a claim for equitable estoppel, and Plaintiffs' attempt in effect to amend the Complaint to assert such a claim is denied as procedurally improper.  "A complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers, and hence such new allegations and claims should not be considered in resolving the motion."  *Com. Tenant Servs., Inc. v. Penske Bus. Media, LLC*, No. 20 Civ. 9756, 2022 WL 4292971, at *5 (S.D.N.Y. Sept. 16, 2022).  Discovery concluded in this case on August 19, 2022.  If Plaintiffs seek to bring an equitable estoppel

claim, Plaintiffs shall file a letter motion seeking leave to do so under Federal Rule of Civil Procedure 15, as set forth below.

**B.**     **Plaintiffs' Motion for Partial Summary Judgment**

Plaintiffs move for partial summary judgment declaring, as a matter of law, that (1) Defendant's statement in its Form S-4 that its warrants "will become exerciseable 30 days after the Closing" is an express waiver of the "later of" condition to exercise in the Warrant Agreement and (2) the date and time of breach for purposes of determining expectation damages on the contract claims is December 31, 2020, at 4:00 P.M.  For the reasons below, Plaintiffs' motion for partial summary judgment is denied with respect to the waiver argument and granted as to the date of breach argument.

**a.**     **Waiver**

Plaintiffs in effect seek summary judgment on Count I, which is "For Breach of Contract -- Waiver of Condition."  Their motion for a declaration on the merits of this claim is denied because genuine issues of fact exist as to whether Kensington waived the "later of" commencement date for exercise of the warrants.  "Contractual rights may be waived if they are knowingly, voluntarily and intentionally abandoned." *Fundamental Portfolio Advisors*, 850 N.E.2d at 658.  "Such abandonment may be established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage." *Id.*  "However, waiver should not be lightly presumed and must be based on a clear manifestation of intent to relinquish a contractual protection. *Id.*  "Generally, the existence of an intent to forgo such a right is a question of fact." *Id.*  "Negligence, oversight, or thoughtlessness does not" create waiver. *Alsens Am. Portland Cement Works v. Degnon Contracting Co.*, 118 N.E. 210, 210 (N.Y. 1917);

14

*accord Luitpold Pharms., Inc. v. Ed. Geistlich Söhne A.G. Für Chemische Industrie*, 784 F.3d 78, 95 (2d Cir. 2015).

Construing the evidence in the light most favorable to Defendant, a reasonable juror could find that Kensington's use of the "later of" language in the Form S-4s was unintentional, the result of oversight and therefore not a waiver.  In depositions, QuantumScape's chief financial officer, chief legal officer and corporate counsel at Wilson Sonsini all testified that the "30-day" language was a mistake.  Counsel from Hughes Hubbard, Kensington's lawyers, testified that some of the language from the Form S-4 was likely taken from a Form S-4 for another company.  Whenever the "30-day" language appears in a Form S-4, the "later of" language also appears (in the financial statements).  Each Form S-4 also identifies as an exhibit the Warrant Agreement, which uses the "later of" language.  *See Consedine v. Portville Cent. Sch. Dist.*, 907 N.E.2d 684, 689 (N.Y. 2009) ("A contract should be read as a whole to ensure that undue emphasis is not placed upon particular words and phrases.").  In addition, after all of the Form S-4s had been filed on November 10, 2020, but before the business combination occurred on November 25, 2020, Kensington used the "later of" language in a Form 10-Q filed on November 16, 2020.

Plaintiffs argue that the "30-day" language constitutes an "express waiver" that can be determined as a matter of law.  *See Alsens*, 118 N.E. at 210 (defining an express waiver as one that "is proved by the express declaration of the party, or by his undisputed acts or language so inconsistent with his purpose to stand upon his rights as to leave no opportunity for a reasonable inference to the contrary").  The evidence outlined above prevents such a determination in this case.  Plaintiffs' cited cases involving situations with unambiguous contractual language are inapposite.  *See, e.g.*, *W.W.W. Assocs., Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990)

(finding "no ambiguity as to the cancellation clause in issue"); *Natale v. Ernst*, 881 N.Y.S.2d 232, 234 (3d Dep't 2009) (finding that a "clear manifestation of intent by defendant to relinquish the protection of the contractual deadline could be reasonably inferred"). The slippery slope Plaintiffs caution against were courts to consider subjective intent in the creation of corporate documents is at odds with New York law. *See Fundamental Portfolio Advisors*, 850 N.E.2d at 658 (requiring intent for waiver); *Alsens*, 118 N.E. at 210 (waiver "is essentialy a matter of intention").

As for Kensington's failure to change the "later of" condition found in its final Form S-4 amendment, a reasonable juror could find that Defendant did not intend to waive the 30-day exercise date, but as the evidence suggests, decided that the December 2, 2020, Form 8-K would be the best place to clarify the commencement date. Plaintiffs point to the large number of reviewers and the fact that changes were made to the "30-day" language at least four times during the revision process. However, Defendant has raised a genuine issue of fact with its explanation that these changes were minor, global conforming changes, like changing "completion of a business combination" to "consummation of a business combination," or "a Business Combination" to "the Business Combination," such that these changes would not have been closely reviewed by team members. Plaintiffs also argue that Defendant's conduct rises to the level of recklessness so extraordinary as to establish waiver but cites no law to support the proposition that recklessness is sufficient to establish waiver. New York law requires waiver to be done "knowingly, voluntarily and intentionally." *Fundamental Portfolio Advisors*, 850 N.E.2d at 658; *see also Davison v. Klaess*, 20 N.E.2d 744, 748 (N.Y. 1939) ("Whether an alleged waiver is express or implied, it must be *intentional*."); *Alsens*, 118 N.E. at 210 ("The intention to relinquish the right or advantage must be proved.").

Plaintiffs' motion for summary judgment is denied with respect to their waiver argument.

**b. Date and Time of Breach**

Plaintiffs' summary judgment motion is granted for a declaration that the date and time of any breach of contract should be December 31, 2020, at 4:00 P.M., which was the first day a warrant holder could exercise the warrant under the 30-day formulation in the Form S-4s.

"Although the amount of recoverable damages is a question of fact, the measure of damages upon which the factual computation is based is a question of law." *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 196 (2d Cir. 2003); *accord Precision Trenchless, LLC v. Saertex multiCom LP*, No. 3:19 Civ. 54, 2022 WL 594096, at *31 (D. Conn. Feb. 28, 2022). "[D]amages for breach of contract should put the plaintiff in the same economic position he would have been in had the defendant fulfilled the contract." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 262 (2d Cir. 2002) (New York law); *accord LG Cap. Funding, LLC v. ExeLED Holdings Inc.*, No. 17 Civ. 4006, 2021 WL 4949173, at *7 (S.D.N.Y. Oct. 25, 2021). "New York courts are clear that breach of contract damages are to be measured from the date of the breach." *Lucente*, 310 F.3d at 262.

Here, Plaintiffs allege that, under the Form S-4s, the warrant exercise period was to begin thirty days after the closing. Since the closing occurred on November 25, 2020, thirty days after the closing would have been December 25, 2020. On that day, the Warrant Agreement would have permitted a warrant holder to deliver notice and payment for exercise. The Warrant Agreement conditions QuantumScape's obligation to issue shares pursuant to the exercise of the warrants on the existence of an effective registration statement. On December 30, 2020, QuantumScape filed a registration statement that covered the shares to be issued upon exercise of the warrants, and the next day, QuantumScape requested that the registration statement be

declared effective December 31, 2020, at 4:00 P.M.  The SEC declared that registration statement effective at that date and time.  Thus, December 31, 2020, at 4:00 P.M. is the date and time of the alleged breach of contract, as warrant holders would have had an exercisable warrant at that time if QuantumScape had followed its "30-day" language.

Contrary to Defendant's arguments, Plaintiffs' ability to actually exercise their warrants is irrelevant to a determination of the issue of the date of breach.  *See LG Cap. Funding, LLC*, 2021 WL 4949173, at *7 ("First, it is wholly irrelevant at this stage to consider what Plaintiff will do with the shares once it receives them.  The date of breach is not dependent on when or if Plaintiff will sell its shares, it is only dependent on when Plaintiff should have received those shares.  Second, selling stock on the open market is not the only way to trade shares or realize value from them.  Plaintiff could have had an agreement in place to privately sell the shares at 11:59:59 PM on the last day it expected to receive its shares.").  Defendant cites cases that are neither recent nor relevant -- none concerned the ability of the non-breaching party to perform in determining the date of breach.  *See Scholle v. Cuban-Venezuelan Oil Voting Tr.*, 285 F.2d 318, 322 (2d Cir. 1960) (considering plaintiff's ability to perform in sending case to the jury); *3M Holding Corp. v. Wagner*, 560 N.Y.S.2d 865, 867 (2d Dep't 1990) (considering plaintiff's ability to perform in denying specific performance relief); *Saewitz v. Epstein*, 6 F. Supp. 2d 151, 157-58 (N.D.N.Y. 1998) (considering plaintiff's ability to perform in denying anticipatory repudiation claim).

Thus, as a matter of law, the date and time of any breach is December 31, 2020, at 4:00 P.M.

**IV.     CONCLUSION**

For the foregoing reasons, both motions are **GRANTED** in part and **DENIED** in part. Defendant's motion for oral argument is **DENIED** as moot.  Defendant's objection to the Osborn Declaration is **DENIED** without prejudice to renewal prior to trial as a motion in limine, as it was not relied on in this decision.

For clarity, the surviving claims are common law fraud, federal securities fraud, breach of contract based on waiver and breach of contract based on amendment.  For the surviving contract claims, the date and time of breach is December 31, 2020, at 4:00 P.M.

The Clerk of Court is respectfully directed to close the motions at Dkts. 111 and 115.

Dated:  September 28, 2023
        New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**