UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                  :
JEFFREY JAKUBIAK,                                 :
                                                  :
                Plaintiff,                 :          20 Civ. 10842 (LGS)
                                                  :
        - against -                              :
                                                  :
QUANTUMSCAPE CORPORATION,                          :
                                                  :
                Defendant.                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                  :
BJI FINANCIAL GROUP INC. and                       :
BRIAN WALSH                                        :
                                                  :          21 Civ. 08755 (LGS)
                Plaintiffs,                :
                                                  :
        - against -                              :
                                                  :
QUANTUMSCAPE CORPORATION,                          :
                                                  :
                Defendant.                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                  :
MICHAEL ASSANTE, JOHN                              :
WILSCHKE, and HEADWATERS                            :          21 Civ. 09565 (LGS)
HOLDINGS LLC,                                      :
                                                  :
                Plaintiffs,                :
                                                  :
        - against -                              :
                                                  :
QUANTUMSCAPE CORPORATION,                          :
                                                  :
                Defendant.                 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF
MOTION IN LIMINE TO EXCLUDE
EXPERT TESTIMONY OF MERRITT B. FOX**

## TABLE OF CONTENTS

TABLE OF CASES ...................................................................................................................... i

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ....................................................................................................................... 2

    **I.**      **Professor Fox's Qualifications and Experience** .................................................. 2

    **II.**     **Professor Fox's Opinions** ....................................................................................... 3

        **A.**     **Background Facts (Section IV at pp. 2-9)**................................................. 3

        **B.**     **Reliance (Section VI at pp. 16 -30)** ......................................................... 4

ARGUMENT .............................................................................................................................. 5

    **I.**      **Professor Fox's Opinions and "Findings" Should Be Excluded
Because They Are Not Helpful to the Jury and Would Usurp The
Role of the Judge**.................................................................................................. 6

        **A.**     **Professor Fox narrates selected portions of the
evidentiary record**.................................................................................... 6

        **B.**     **Professor Fox proposes to instruct the jury as to
the factors it should apply** ...................................................................... 7

        **C.**     **Professor Fox proposes to tell the jury how the
case should be decided** ............................................................................ 7

    **II.**     **Professor Fox Does Not Have The Expertise or Experience
of the Reasonable Investor or Trader About Whom He
Seeks To Opine**...................................................................................................... 8

    **III.**    **To The Extent Professor Fox Employs Any Methodology,
It Is Unreliable**...................................................................................................... 9

        **A.**     **Professor Fox's "Methodology" Is Unreliable Because
He Begins With Facts Of Which A Reasonable
Investor Was Not Informed** ................................................................... 9

        **B.**     **Professor Fox's "Methodology" is at odds with the facts
and case law** ............................................................................................. 10

        **C.**     **Professor Fox's "Methodology" Is Not Reliably Applied** ................... 12

            **1.**     **Professor Fox improperly assesses credibility**........................... 12

            **2.**     **Professor Fox's opinions rest unreliably on speculation** ......... 13

CONCLUSION ........................................................................................................................... 15

## TABLE OF CASES

*Andrews v. Metro N. Commuter R.R. Co.*,
   882 F.2d 705 (2d Cir. 1989) ...................................................................................................7

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993).........................................................................................................5, 9

*FAA v. Landy,*
   705 F.2d 624 (2d Cir.) ...........................................................................................................7

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997)................................................................................................................5

*Highland Cap. Mgmt., L.P. v. Schneider*,
   379 F. Supp.2d. 461 (S.D.N.Y. 2005)  .......................................................................7, 8, 14

*Hill v. City of New York,*
   2007 WL 1989261, No. 03-CV-1283 (ARR)(E.D.N.Y. July 5, 2007) ...............................12

*In re Mirena IUS Levonorgestrel-Related Prod. Liability Litig. (No. II)*,
   982 F.3d 113 (2d Cir. 2020) ...................................................................................................9

*In re Rezulin Products Liab. Litig.*,
   309 F. Supp.2d 531 (S.D.N.Y. 2004) ........................................................................6, 10, 14

*In Re Ames Dept. Stores Inc. Stock Litig.,*
   991 F.2d 953 (2nd Cir. 1993) ...............................................................................................10

*Kumho Tire Co., Ltd. v. Carmichael*,
   526 U.S. 137 (1999).............................................................................................................5, 9

*Marx & Co., Inc. v. Diners' Club, Inc.*
   550 F.2d 505 (2d Cir. 1977) ...........................................................................................6, 7, 8

*MF Glob. Holdings Ltd v. PricewaterhouseCoopers LLP*,
   232 F. Supp.3d 558 (S.D.N.Y. 2017) ...................................................................................10

*Nichols v. Universal Pictures Corp.*,
   45 F.2d 119 (2d Cir. 1930)  ....................................................................................................2

*Roundout Valley Cent. Sch. Dist. V. Coneco Corp.*,
   321 F. Supp.2d 469 (N.D.N.Y. 2004)......................................................................................7

*Travelers Indem. Co. v. Northrop Grumman Corp.*,
   2014 WL 464769, No. 12 Civ. 3040 (KBF)(S.D.N.Y. Jan. 28, 2014) ................................14

*U.S. V. Bilzerian,*
    926 F.2d 1285 (2d Cir. 1991) .................................................................................6

*U.S. v. Sanders,*
    2013 WL 1421487, No. S1 12 Crim. 0574 (LAK) (Mar. 27, 2013) ...................................8

*United States v. Scop*,
    846 F.2d 135 (2d Cir. 1988) ...............................................................................6, 7, 12

*United States v. Tin Yat Chin*,
    371 F.3d 31 (2d Cir. 2004) .................................................................................6

**INTRODUCTION**

Plaintiffs seek to exclude the testimony of Merritt B. Fox, a securities law professor who proposes to offer his personal opinion on a legal element of plaintiffs' Section 10(b) claim – whether each of the plaintiffs reasonably relied on the unambiguous statement in the Defendant's Form S-4 that its warrants "will become exercisable 30-days after the Closing" of the QuantumScape merger. [1]

Proceeding from the assumption that the unambiguous statement was "mistaken," and having "checked out" a list of SEC filings that defense counsel told him correctly described the exercise date, Professor Fox offers a narrative of selected "facts" to opine that each of the plaintiffs did not reasonably rely on the 30-day statement.   In doing so, he offers no testimony concerning securities law terms or provisions, the areas in which he has expertise.  Instead, Professor Fox assumes the role of the judge in stating the factual issues to be considered in determining the element of reasonable reliance under Section 10(b) and then sets forth selected portions of the discovery record to tell the factfinder to decide that element in favor of his client.

To the extent that Professor Fox applies any ascertainable methodology at all, other than that of an advocate emphasizing selected evidence, it is fatally flawed.

- First, Professor Fox's assignment from counsel assumed that the unambiguous statement was "mistaken."  Professor Fox conceded, however, that the 30-day statement would not give a reasonable investor any reason to believe the company

---

[1] Professor Fox's Amended Report, which states the substance of and bases for his opinions, is attached as Exhibit A (Deposition Ex. 137) to the accompanying Declaration of Gregory E. Keller in Support of Plaintiffs' Motion in Limine to Exclude Expert Testimony of Merritt B. Fox ("Keller Decl.).  Citations in this brief to "Ex. A" are to the Fox Amended Report.   On January 22, 2024, Defendant indicated that Professor Fox will not offer his opinion with respect to materiality, set forth in Section V at pages 10-16 of his report.

was mistaken.  Unlike Professor Fox, who was answering a carefully framed question from counsel, a reasonable investor would have no reason to look beyond the 30-day statement for a different description of the exercise date.

- Second, Professor Fox inappropriately narrows the factual inquiries relevant to reasonableness of reliance to two issues, without any basis in the case law or industry practice for doing so.  His resulting "findings" are stitched together with assumptions about what plaintiffs allegedly knew, "would know," or were "on notice" of, all of which are impermissible state of mind testimony.

- Third, Professor Fox considers only those parts of the record that support the conclusion sought by his client and ignores all contrary evidence, which improperly assesses credibility.   What he describes as his opinions and "findings" are nothing more than the advocacy of another high-priced lawyer hired by the Defendant to make the same arguments that its counsel has been making since the beginning of this case.  In the words of Judge Learned Hand, "[a]rgument is argument whether in the [witness] box or at the bar, and its proper place is the last." *Nichols v. Universal Pictures Corp.,* 45 F.2d 119, 123 (2d Cir. 1930).

## BACKGROUND

I.      **Professor Fox's Qualifications and Experience**

Professor Fox is the Arthur Levitt Professor of Law at Columbia Law School and the Co-Director of the Center for Law and Economic Studies at the Columbia Law School.  He holds a law degree and Ph. D in Economics.  *Ex. A at p. 1.*  He has been an academic for over 40 years and claims his opinions "are based on knowledge and experience acquired as a published scholar and teacher…., through my training as a Ph. D economist, and as a former practicing lawyer in

2

the State of New York at the firm of Cleary, Gottlieb, Steen & Hamilton." *Id. at pp. 1-2.*

Professor Fox, however, practiced corporate and securities law for only six years between 1974

and 1980, and became an academic after obtaining his economics Ph. D in industrial

management and international business. *Keller Decl., Ex. B (Fox Deposition) at pp. 7, ln 20 – p.

8, ln 15.*[2] As an expert, he now charges $1300 per hour. *Ex. B., Fox Dep. at p. 6, ln 3-9.*

Professor Fox has no experience in making investments, has never engaged in any

securities trading, *Ex. B, Fox Dep. at p. 16, ln 8 – 17,* and invests "entirely through investment

funds and pursuant to the direction of an investment advisor…" *Id. at p. 199, ln 19 – p. 200, ln

2.* He does not read information about specific companies, *id. at p. 200, ln 3-5,* does not read

the prospectus of any fund in which he invests, *id. at p. 200, ln 6-8,* and does not "engage in

investing, so from that point of view I'm not a sophisticated investor." *Id. at p. 201, ln 13-21.*

## II.    Professor Fox's Opinions

The substance of and bases for Professor Fox's opinions are set forth in his Amended

Report, which has three substantive sections – background facts (Section IV), materiality

(Section V), and reliance (Section VI).  Defendant has recently indicated that Professor Fox will

not offer any opinion with respect to materiality, described at pages 10 through 16.   The

remaining portions of his report are described below.

### A.    Background Facts (Section IV at pp. 2-9)

The background Professor Fox provides for his opinion is a narrative description of

statements concerning the warrants in a list of documents, predominantly SEC filings, provided

to him by defendant's counsel. *See Ex. A at pp. 5-9; Ex. B, Fox Dep. at p. 48, ln 8-14.*   The list

---

[2] The Fox Deposition, excerpts of which are attached as Exhibit B to the Keller Declaration, is cited as "*Ex. B, Fox Dep.*"

includes the Form S-4s containing the unambiguous statement that the warrants "will become exercisable 30 days after the consummation of the Business Combination [with QuantumScape]," which he characterizes as "mistaken" even though none of the cited documents make that characterization. *Ex. A at p. 9.* Professor Fox also lists "publicly available information" that "[c]ounsel identified …[as] a correct statement of the commencement date." *Id. at p. 11; Ex. B, Fox Dep. at p.133, ln 8-14.*

B.      **Reliance (Section VI at pp. 16 -30)**

Professor Fox indicates that he was "asked for [his] expert analysis regarding specific factors applicable to a determination of what constitutes reasonable reliance in the context of an investor who claims to have read and relied to his financial detriment on the mistaken statement in the S-4." *Ex. A at p. 16.* He discusses "(1) whether under the circumstances pertaining to an individual Plaintiff, the mistaken statement was likely to have been a substantial factor leading to the plaintiff's decision to enter into the relevant transactions and (2) … whether reliance on the mistaken statement was reasonable." *Id.* In assessing reasonableness, he reviewed only "portions of the factual record developed in discovery" and identifies only two factors – "the extent to which the Plaintiff may have been careless in ignoring available information indicating that the mistaken statement was incorrect" and "Plaintiff's financial sophistication." *Id.*

In his proposed testimony, Professor Fox opines or "finds" that each of the plaintiffs did not reasonably rely on the unambiguous 30-day statement. *Ex. A at pp. 16-30.* Professor Fox, who admittedly has no experience trading any type of securities, asserts that the plaintiffs were experienced traders who engaged in large transactions, and speculates about what each "would know" or was "on notice of" after reading the unambiguous statement of the company that its warrants would be exercisable 30-days after closing. *See, e.g. Ex. A at p. 17, 21.* While

4

purporting not to assess credibility, he ignores the plaintiffs' testimony that they read and relied

on the 30-day statement and instead draws the opposite conclusion from isolated pieces of

evidence that he either takes out of context or does not understand because he lacks any trading

experience.  Using only his carefully selected facts and supposition, Professor Fox echoes his

client's position that the plaintiffs' approach to determining the exercise date – i.e. searching for

and reading the unambiguous statement in the Form S-4 – represented "a lack of appropriate due

diligence and a high degree of carelessness." *Ex. A at p. 20, 23, 26,*

Professor Fox does not provide any explanation of securities law provisions or identify

any custom or practices in the securities industry of which he has specialized knowledge that

would be helpful to the trier of fact in understanding the evidence.  His proposed testimony

simply identifies evidence that supports his client's position, ignores all other evidence, and then

offers his own opinion on the ultimate issue to be determined by the factfinder.

## ARGUMENT

Expert testimony must be both helpful to the trier of fact and reliable.  *Daubert v. Merrell*

*Dow Pharm., Inc.,* 509 U.S. 579, 591 (1993); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526

U.S. 137, 147-48 (1999) (*Daubert'*s "gatekeeping" obligation applies to all expert testimony).

To be reliable, expert testimony must be the product of reliable principles and methods and

reliably apply those principles and methods to the facts of the case.  Fed. R. Evid. 702.  "Nothing

in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion

evidence that is connected to existing data only by the *ipse dixit* of the expert."  *Gen. Elec. Co. v.*

*Joiner*, 522 U.S. 136, 146 (1997).  As a gatekeeper the district court is also responsible for

determining "whether a witness qualifies as an expert" by "compar[ing] the area in which the

witness has superior knowledge … with the subject matter of the proffered testimony." *United States v. Tin Yat Chin*, 371 F.3d 31, 40 (2d Cir. 2004).

**I.      Professor Fox's Opinions and "Findings" Should Be Excluded Because They Are Not Helpful to the Jury and Would Usurp The Role of the Judge.**

Professor Fox proposes to (1) recite selected information drawn from documents provided by Defendant's counsel and from the discovery record, (2) articulate certain factors that he personally considers to be significant to the jury's determination of reasonable reliance, and (3) state his opinions or "findings" based on the application of those factors to his selected evidence. This exercise does not meet the standard for admissibility under Fed. R. Civ. P. 702.

Expert testimony is admissible only if it "will assist the trier of fact to understand the evidence or to determine a fact in issue." *In re Rezulin Products Liab. Litig.*, 309 F. Supp.2d 531, 540 (S.D.N.Y. 2004) (quoting Fed. R. Evid. 702).   Particularly in securities cases, its use "must be carefully circumscribed to assure that the expert does not usurp the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." *U.S. v. Bilzerian,* 926 F.2d 1285, 1294 (2d Cir. 1991).   While "an expert may opine on an issue of fact within the jury's province, he may not give testimony stating ultimate legal conclusions based on those facts."   *Id.,* citing *Marx & Co., Inc. v. Diners' Club, Inc.* 550 F.2d 505, 510-11 (2d Cir.), *cert. denied,* 434 U.S. 861 (1977); *United States v. Scop*, 846 F.2d 135, 139-40, *modified on other grounds*, 856 F.2d 5 (2d Cir. 1988).   Because Professor Fox offers only to apply his view of the applicable legal requirements to selected evidence to determine the ultimate legal conclusion of reasonable reliance, his testimony is inadmissible.

**A.      Professor Fox narrates selected portions of the evidentiary record**.

First, much of Professor Fox's proposed testimony is simply a recitation of the contents of various filings describing the legal terms of the warrant agreements.  This description "is

6

simply rehashing otherwise admissible evidence about which he has no personal knowledge."

*Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp.2d. 461, 469-70 (S.D.N.Y. 2005).  As in

*Highland,* where the expert proposed to recite a history of dealings of the parties based on

deposition testimony and documentary evidence, Professor Fox's description of facts is

inadmissible because it relates "lay matters which a jury is capable of understanding without the

expert's help."  *379* F. Supp.2d at 469, *quoting Andrews v. Metro N. Commuter R.R. Co.*, 882

F.2d 705, 708 (2d Cir. 1989).

> **B.      Professor Fox proposes to instruct the jury as to the factors it should apply.**

Second, without any supporting authority, Professor Fox isolates two factual issues –

"financial sophistication" and "carelessness" in relying on the unambiguous statement – that he

asserts should determine the legal conclusion of reasonable reliance.  *Ex. A. at p. 16.*  This

proposed testimony is "calculated to 'invade the province of the court to determine the applicable

law and to instruct the jury as to that law.  *Scop,* 846 F.2d at 140, *quoting FAA v. Landy,* 705 F.2d

624, 632 (2d Cir.), *cert. denied,* 464 U.S. 895 *(*1983).  *See also Roundout Valley Cent. Sch. Dist.*

*V. Coneco Corp.,* 321 F. Supp.2d 469, 480 (N.D.N.Y. 2004) ("it is axiomatic that an expert is not

permitted to provide legal opinions, legal conclusions or interpret legal terms; those roles fall

solely within the province of the court").  Professor Fox's articulation of the factors to be

considered in determining reasonable reliance is "inadmissible because '[i]t is not for the

witnesses to instruct the jury as to applicable principles of law, but for the judge."  *Highland,* 379

F. Supp.2d at 470, *quoting Marx & Co.,* 550 F.2d at 509-10.

> **C.      Professor Fox proposes to tell the jury how the case should be decided.**

In appropriate circumstances, qualified experts have been permitted to testify about

certain terms used in securities laws or the practices of lawyers and others engaged in the

securities business.  *Marx &Co.,* 550 F.2d at 508-509.  Professor Fox does not propose to offer

such testimony.  Instead, he proposes to opine and "find" that plaintiffs did not reasonably rely

upon the unambiguous 30-day statement, which are "his conclusions as to the legal significance

of various facts [to be] adduced at trial."  *Marx & Co., 550 F.2d at 510.*  "[S]uch testimony

'amounts to no more than an expression of the (witness') general belief as to how the case should

be decided."  *Id, quoting McCormick on Evidence, § 12 at 26-27.*  Like the expert at issue in

*Highland,* who applied generic legal principles under the securities laws to selected facts to

opine that those laws had been violated, Professor Fox's proposed testimony "is inadmissible

because it usurps the jury's role in finding the facts and applying those facts to the law as

instructed by the court."  *Highland,* 379 F. Supp.2d at 471.

## II.    Professor Fox Does Not Have The Expertise or Experience of the Reasonable Investor or Trader About Whom He Seeks To Opine.

Professor Fox is unquestionably an expert on securities laws.  However, he does not

propose to opine on any securities law terms that a lay person would not understand.    Instead,

he improperly provides his own opinion about how to resolve factual inquiries that he declares

are "crucial" to determining the ultimate issue of reasonable reliance of traders in QuantumScape

securities.  *See U.S. v. Sanders,* 2013 WL 1421487 at *2, No. S1 12 Crim. 0574 (LAK)(Mar. 27,

2013)( "the jury is quite capable of applying the [legal] standard…to the facts of record and

reaching an appropriate judgment without "expert" testimony.")

Moreover, on those reliance issues Professor Fox has neither expertise nor experience.

He has never chosen an individual investment for himself or read the prospectus for any

investment he has made.  *Ex. B, Fox Dep. at p. 199, ln 22–- p. 200, ln 8.*  When pressed to

identify the expertise that he employed to form his opinions, he resorted either to his securities

law expertise or to the universal quality of "common sense."  *See, e.g., Ex. B, Fox Dep. at p. 137,*

*ln 5-9; p. 160, ln 13-25.*   He concedes, however, that the reasonable investor does not have

securities law expertise, *id. at p. 177, ln 12-15,* rendering his legal expertise irrelevant to the

decision-making process of investors.   Common sense requires no specialized knowledge, and

therefore is not a permissible subject of opinion testimony under Rule 702.

### III.    To The Extent Professor Fox Employs Any Methodology, It Is Unreliable

Professor Fox's proposed testimony should also be excluded because his methodology is

unreliable.   Under *Daubert*, the court must preliminarily assess "whether the reasoning or

methodology underlying the testimony is scientifically valid and whether that reasoning or

methodology properly can be applied to the facts in issue."  509 U.S. at 592-93.  This exercise

also applies to testimony based upon "technical" or "other specialized" knowledge.  *Kuhmo Tire,*

526 U.S. at 146-47.   "An expert's methodology must be reliable at every step of the way…"   *In*

*re Mirena IUS Levonorgestrel-Related. Prod. Liab. Litig. (No. II)*, 982 F.3d 113, 123 (2d Cir.

2020).

#### A.    Professor Fox's "Methodology" Is Unreliable Because He Begins With Facts Of Which A Reasonable Investor Was Not Informed.

Professor Fox's methodology, to the extent it exists, is fundamentally flawed because he

was instructed to assume that the 30-day statement was "mistaken."  QuantumScape, however,

never told the investing public that its unambiguous statement was "mistaken," and Professor

Fox agrees that the unambiguous 30-day statement would not give an investor reason to believe

the company was mistaken.  *Ex. B., Fox Dep. at p. 94, ln 18-21.*

Nor did Professor Fox attempt to replicate the process that the plaintiffs had described in

making their investments. *Ex. B, Fox Dep. at p. 55, ln 12-21.*  Instead, he was provided by

counsel with a list of filings that contained a description of the warrant agreement and the

exercise commencement date, which he then "checked…out." *Id. at p. 133, ln 8-14.* He does not explain how checking out counsel's list is relevant or helpful in determining a reasonable investor's understanding of the 30-day statement in the Form S-4.

Professor Fox also offers his supposition that market participants, who lack his securities law expertise, would somehow understand that the 30-day statement could not be relied upon and search for contrary information elsewhere. *Ex. A at p. 13.* Experts, however, are not permitted to speculate "as to what market participants did or did not understand." *MF Glob. Holdings Ltd v. PricewaterhouseCoopers LLP*, 232 F. Supp.3d 558, 577 (S.D.N.Y. 2017). Nor could Professor Fox's argument be based on an industry practice, as he has no expertise in trading securities and his personal opinion "cannot serve as the predicate for any purported industry…standard." *Rezulin Products,* 309 F. Supp.2d at 543.

### B.    Professor Fox's "Methodology" is at odds with the facts and case law.

Professor Fox's opinions on reasonable reliance are suffused with the premise that investors, in ascertaining the exercise date of the warrants, may reasonably rely only on the original Form S-1, pursuant to which the stand-alone SPAC went public and registered its securities, and not the Form S-4 for the QuantumScape merger. *See, e.g., Ex. A at pp.5, 17.* Indeed, in setting forth his materiality opinion, now withdrawn, Professor Fox argued that the Form S-4 was only "aimed at providing disclosures to Kensington *shareholders* in their decision whether to vote for the merger." *Ex. A. at pp. 14-15.*

The Form S-4, however, was not merely a proxy statement, but a registration statement for the issuance of hundreds of millions of new shares to the investing public. Investors in any securities of a public company are entitled to rely on statements of material fact contained in SEC filings, even when those filings relate only to a specific security. *In Re Ames Dept. Stores*

10

*Inc. Stock Litig.,* 991 F.2d 953, 965 (2nd Cir. 1993) (rejecting argument that prospectuses were directed "to discrete groups of potential purchasers, not issued to the public generally").

Moreover, as a SPAC, Kensington was required to return the $10 per share it raised in its IPO if it could not accomplish a business combination within two years. Professor Fox agrees that no investor would want to exercise a warrant to purchase stock in the stand-alone SPAC for $11.50 in the absence of such a transaction, *Ex. B, Fox Dep. at p. 28, ln 1 – p.29, ln 18; p. 30, ln 14-24,* and that it is "the possibility of a business combination that would increase the value of the shares that would make the warrants attractive to investors." *Id. at p. 30, ln 25 – p. 31, ln 8.* Since the Form S-4 is the document that describes the company to be formed in the business combination and its future financial condition, *Ex. B, Fox Dep. at p. 72, ln 5 – p. 73, ln 10,* it is precisely the place that a reasonable investor would look to find the company's determination of when the warrants would be exercisable in connection with the merger. In fact, QuantumScape itself directed investors to its Form S-4 for that very information. *Declaration of Gregory E. Keller in Support of Plaintiffs' Motions For Partial Summary Judgment (ECF 115) ("Keller SJ Decl."), Exs. AAA, BBB (ECF 115, Atts. 31, 32).*

Finally, contrary to Professor Fox's assertion, the Form S-4 was directed specifically to warrant holders in the Q&A section titled "[w]ho can help answer any questions?" *Keller S.J. Decl., Ex. Q at p. 21 (31/505) (ECF 115, Att.17).* After identifying where to address inquiries, the Form S-4 stated "[t]o obtain timely delivery, Kensington's stockholders and *warrant holders* must request the materials no later than five business days prior to the special meeting." *Id. (emphasis added).* Professor Fox has "no idea" why the defendant's Form S-4 addressed warrant holders directly. *Fox Dep. at p. 96, ln 8 – p. 97, ln 5.*

11

C.    Professor Fox's "Methodology" Is Not Reliably Applied.

1.    Professor Fox improperly assesses credibility.

While Professor Fox states that "none of the analysis I set out depends on a credibility

finding," *Ex. A at p. 17,* his "analysis" consists of selecting evidence that supports his position

and ignoring contrary evidence.  This process of accepting evidence he favors and rejecting

undisputed testimony to the contrary is unreliable because it is impermissibly "based on [his]

personal assessment of the credibility of another witness' testimony," which is "exclusively for

the determination of the jury."  *Scop,* 846 F.2d at 142; *Hill v. City of New York,* 2007 WL

1989261, No. 03-CV-1283, at *6 (ARR) (E.D.N.Y. July 5, 2007).

For example, Professor Fox notes that plaintiffs Jakubiak and Walsh looked at the

original Form S-1 to find the description of certain redemption provisions for the warrants and

argues that they somehow knew that they should also have looked there for the exercise date.

*Ex. A at p. 18.*  He ignores the plaintiffs' testimony that they looked at the redemption language

in the Form S-1 only because they found the language describing the redemption provisions in

the Form S-4 confusing and that they had no reason to look at the exercise date description in the

Form S-1 because the 30-day statement in the Form S-4 was unambiguous.  *Keller Decl., Ex. C*

*(Jakubiak Deposition) at p. 85, ln 7 – p. 86, ln 9; p. 101, ln 23 - p. 102, ln 10.*

Similarly, asserting that Mr. Jakubiak examined the warrant agreement in late November

2020 and somehow misunderstood the exercise date provision in it, Professor Fox jumps to the

conclusion that Mr. Jakubiak could not have reasonably relied on the 30-day statement in the

Form S-4.  *Ex. A at p. 19.*  Professor Fox ignores Mr. Jakubiak's testimony that he examined only

the warrant agreement's redemption provisions about which other investors had expressed

concern and did not read or review the exercise date provision because he understood from the

Form S-4 that it was 30-days after the Closing.  *Keller Decl., Ex. C (Jakubiak Dep.) at pp. 123, ln 25 – p. 124, ln* 14; *p. 126, ln 9 – p.127, ln 25.*

Professor Fox repeats the same unreliable pattern of assessing credibility in asserting that Hayler Osborn, the lead trader at plaintiff Headwaters Holdings, did not reasonably rely on the 30-day statement.  He notes that after QuantumScape informed Headwaters that the warrants could not be exercised until the "later of" date of June 30, 2021, which created increased exposure for Headwaters, one of Mr. Osborn's colleagues, Chris Faulls, criticized his reliance on the 30-day statement.  Professor Fox ignores Mr. Faulls' testimony that he, like Mr. Osborn, typically looked to the body of a Form S-4 to find warrant terms when he traded in SPAC warrants, *Keller Decl., Ex E (Faulls Deposition) at p. 28, ln 4-16;  p. 31, ln 8-16,* and that he was unable to find any reference to the "later of" date in QuantumScape's S-4 when he searched it after being told of the company's new position.[3]  *Id. at  pp. 86, ln 1-17; p. 88 ln 19 - p. 89, ln 10.*

Professor Fox's assertion that he *"find[s]"* that "Headwaters did not reasonably rely," *Ex. A at p. 26,* reveals his proposed testimony for precisely what it is – impermissible credibility assessments of the evidence to determine an ultimate legal issue for the finder of fact.

###        2.        Professor Fox's opinions rest unreliably on speculation.

Professor Fox further supports his conclusion that certain plaintiffs did not in fact rely on the 30-day statement by observing that some plaintiffs traded in QuantumScape securities after December 10, 2020, when they learned that the company would not allow exercise 30 days after the closing.  *See Ex. A at pp. 22.*  Investment decisions that traders made after December 10,

---

[3] In this respect, Mr. Faulls was no different from QuantumScape's investor relations personnel, who similarly could not find any reference to the "later of" date in the Form S-4 even after the closing, as well as the company's CFO, who was unable to point them to any such reference when they asked. *Keller SJ Decl., Exs.CCC, DDD*

2020, based on then-prevailing prices, have no bearing on whether they relied on the 30-day statement in undertaking transactions before December 10. Lacking trading experience, Professor Fox also fails to understand that a trader may continue, rather than abandon, hedging positions after learning of the company's changed position to avoid or minimize loss, and not because they did not previously rely on the 30-day statement of the warrant exercise date. *Keller Decl., Ex. D (Walsh Deposition) at pp. 146, ln 11- p. 147, ln 21.* Professor Fox's uniformed speculation does not meet *Daubert's* reliability requirement.

Similarly unreliable is Professor Fox's opinion that plaintiffs' reliance on the 30-day statement was unreasonable due to "a lack of appropriate due diligence and a high degree of carelessness." *Ex. A at p. 19.* Professor Fox concedes that nothing in the plain English description of the warrant exercise date in the Form S-4 "would cause an investor to believe that the company was mistaken." *Ex. B, Fox. Dep. at p.94, ln 18-21.* Nevertheless, pointing to other documents identified for him by defense counsel as containing "correct information," he impermissibly speculates about what plaintiffs "would know," *Ex. A at pp. 17, 21,* or information of which plaintiffs were "on notice," *Ex. A at pp. 20, 22, 23. Highland,* 379 F. Supp.2d at 469 (testimony that individual was "likely aware" is speculation), *Rezulin,* 309 F. Supp.2d at 547 ("Inferences about the intent or motive of parties or others lie outside the bounds of expert testimony), *Travelers Indem. Co. v. Northrop Grumman Corp.,* 2014 WL 464769, No. 12 Civ. 3040 (KBF), at *5 (S.D.N.Y. Jan. 28, 2014) (expert may not testify about what parties "must have known" or "could reasonably have anticipated," as such opinions are "not based on science but conjecture"). Because Professor Fox's reliance opinions are premised on such conjecture and speculation, they are unreliable and inadmissible.

14

## CONCLUSION

For the reasons set forth above, the Defendant should be precluded from calling Professor

Fox at trial to testify to the facts, opinions and "findings" set forth in the Amended Fox Report.

Dated:  January 30, 2024

        Respectfully submitted,


        **KELLER PLLC**

        _/s/ Gregory E. Keller_
        Gregory E. Keller
        gkeller@kellerpllc.com
        346 Westbury Ave., Suite 200
        Carle Place, NY 11514
        Tel: (516) 857-3993

        _Counsel for Plaintiffs Jeffrey Jakubiak,_
        _BJI Financial Group Inc., Brian Walsh,_
        _and Headwaters Holdings LLC_